**Affirmed in Part and Reversed and Rendered in Part and Opinion filed January 17, 2013.**

In The

# Fourteenth Court of Appeals

NO. 14-10-00555-CV

**SOON PHAT, L.P., INDIVIDUALLY AND D/B/A CHARLESTON COURT APARTMENTS, YIN SOON CHOI, MEI LIAN CHOI AND DERSING, INC.,** Appellants

V.

**JUVENAL ALVARADO AND FELICIANO ALVARDO,** Appellees

On Appeal from the 334th District Court
Harris County, Texas
Trial Court Cause No. 2007-13757

NO. 14-10-00603-CV

**JUVENAL ALVARADO AND FELICIANO ALVARADO,** Appellants

V.

**ROBERT GROCE DILL, INDIVIDUALLY AND D/B/A ARROW TOWING, SAMUEL LEE THOMPSON, BROCK KEITH DION, MESHA BOYLES A/K/A MESHA KYOMI STEWART, SOON PHAT, L.P. INDIVIDUALLY AND D/B/A CHARLESTON COURT APARTMENTS, YIN SOON CHOI, MEI LIAN CHOI, AND DERSING, INC.,** Appellees

## NO. 14-11-00033-CV

**ROBERT GROCE DILL, INDIVIDUALLY AND D/B/A ARROW TOWING, SAMUEL LEE THOMPSON AND BROCK KEITH DION, Appellants**

**V.**

**JUVENAL ALVARADO AND FELICIANO ALVARDO, Appellees**

On Appeal from the 334th District Court
Harris County, Texas
Trial Court Cause No. 2007-13757

## O P I N I O N

This consolidated matter encompasses three appeals, multiple parties, and a multitude of appellate issues in connection with a fight that occurred during an attempt to tow a pickup truck from an apartment complex parking lot. We affirm the trial court's judgment in part, and reverse and render in part.

### OVERVIEW

Wrecker driver Brock Keith Dion and his helper, Samuel Lee Thompson, attempted to tow Feliciano Alvarado's pickup truck from the Charleston Court Apartments parking lot on August 28, 2005. Feliciano and his brother, Juvenal Alvarado, fought with Dion and Thompson during the attempt.

Juvenal lived with his wife and children at Charleston Court. Feliciano was visiting Juvenal when Dion and Thompson attempted to tow Feliciano's pickup

2

truck.

Juvenal was arrested after the fight and charged with a felony, aggravated assault with a deadly weapon. After Juvenal spent seven months in jail, the case against him was re-filed as a misdemeanor criminal mischief charge. Two days after the misdemeanor charge was filed, the initial felony charge was dismissed. Juvenal then agreed to a plea bargain on the misdemeanor charge and was released from jail on March 24, 2006.

Juvenal and Feliciano subsequently filed a civil suit asserting various tort claims. The litigation spawned by the 2005 fight in the Charleston Court parking lot involves nearly a dozen individuals and entities.

Arrow Towing owned the wrecker and had a contract to tow improperly parked vehicles from the Charleston Court parking lot. Arrow's sole owner is Robert Groce Dill.

Charleston Court Apartments is owned by Soon Phat, L.P. In turn, Soon Phat, L.P. has four partners: Yin Soon Choi, Mei Lian Choi, Paul Seto, and Sue Oi. These partners also are officers of Dersing Inc., a separate entity that wrote checks to Charleston Court employees. Mei Lian Choi worked as Charleston Court's office manager.

Mesha Boyles was a security guard at Charleston Court and was on duty at the time of the fight.

Juvenal and Feliciano sued Dion; Thompson; Dill, individually and d/b/a Arrow Towing; Soon Phat, L.P., individually and d/b/a Charleston Court Apartments; Yin Soon Choi; Mei Lian Choi; Dersing, Inc.; and Boyles. Juvenal and Feliciano asserted multiple causes of action including assault, false imprisonment, negligent hiring and retention, and malicious prosecution. The

3

claims were tried to a jury in 2010.

The jury returned a unanimous verdict in favor of Juvenal and Feliciano on all claims submitted in the jury charge. The trial court granted the defendants' motion to disregard the jury's findings as to liability and damages for malicious prosecution; it signed a final judgment awarding damages in favor of Juvenal and Feliciano on their remaining claims. All parties appealed from the trial court's final judgment except Boyles.[1]

In cause number 14-10-00555-CV, Soon Phat, L.P., individually and d/b/a Charleston Court Apartments, Yin Soon Choi, Mei Lian Choi, and Dersing, Inc. (collectively, the "Charleston Court Appellants") appeal the trial court's judgment raising 14 issues; Juvenal and Feliciano Alvarado raise one cross-point. In cause number 14-10-00603-CV, Juvenal and Feliciano Alvarado appeal the trial court's judgment raising four issues; the Charleston Court Appellants raise one cross-point. In cause number 14-11-00033-CV, Dion, Thompson, and Dill, individually and d/b/a Arrow Towing, appeal the trial court's judgment raising three issues; Juvenal and Feliciano Alvarado raise one cross-point. All three appeals were consolidated.

### FACTUAL BACKGROUND

The parties vigorously dispute many facts surrounding the fight. The jury saw a video recorded by four cameras mounted inside the tow truck, which captured some of what happened.

Juvenal and his wife hosted a birthday party for their daughter at their Charleston Court apartment on August 28, 2005, attended by about 30 friends and

---

[1] Boyles, "although duly cited to appear and answer, failed to answer or appear at trial and wholly made default." No notice of appeal was filed on behalf of Boyles. At oral argument, the Charleston Court Appellants' counsel disclaimed representation of Boyles on appeal.

4

family members. Feliciano arrived in the evening to attend the party.

Feliciano parked his pickup truck in a handicapped parking spot in the apartment parking lot. Shortly thereafter, an Arrow Towing wrecker towed Feliciano's truck and took it to a nearby impound. Juvenal, Feliciano, Juvenal's son-in-law Juan Pinera, and a friend rode in Juvenal's truck to the impound to retrieve Feliciano's truck. Pinera drove Feliciano's truck back to Charleston Court; Feliciano rode back with Juvenal in Juvenal's truck.

No parking spaces were available when they arrived back at Charleston Court. Dion and Thompson already were at Charleston Court because security guard Boyles had asked for a wrecker to come to the property. Feliciano testified that Pinera was still sitting in Feliciano's truck with the engine running when Dion backed up his wrecker to hook onto Feliciano's truck. Feliciano and Juvenal exited Juvenal's truck and walked toward the wrecker to talk to Dion. Feliciano testified that the wrecker was lifting Feliciano's truck, so Feliciano yelled at Pinera to drive off with the truck to prevent Dion from towing it. Pinera and Feliciano testified that Pinera managed to drive off with Feliciano's truck.

Dion testified that he could not remember whether he hooked up Feliciano's truck. However, Dion denied that anyone was sitting in Feliciano's truck and stated that he never would hook up a vehicle with its engine running and a person inside.

Feliciano testified that, after Pinera drove off with his truck, he went to Dion to question him about why he wanted to tow his truck. He testified that he was not angry when he went to talk to Dion; another party guest, Javier Cardenas, testified that Feliciano was "mad," and Pinera testified that Feliciano and Juvenal both were angry because Feliciano's truck had been towed. Feliciano stated that he did not argue with Dion and never put his hands on him or pushed him.

5

According to Feliciano, Thompson immediately pepper-sprayed his face and chest and then hit him in the head. Feliciano's friend, Moises de la Torre, testified that Thompson hit Feliciano in the head with a flashlight Boyles had given Thompson. Feliciano testified that Juvenal's daughter pulled him away; washed his face because he could not see and was bleeding; and took him up to the apartment until an ambulance arrived. Feliciano stated that he received 14 staples on his head and could not work for one week because of his head injury.

Juvenal testified that when Pinera drove off in Feliciano's truck, Juvenal parked his truck and Feliciano walked over to Dion to show him paperwork demonstrating that Feliciano's truck already had been towed once that evening. According to Juvenal, Thompson then "came up" to Feliciano and struck him with a flashlight on the head. Juvenal testified that he wanted to take Feliciano up to his apartment because Feliciano could not see anything, but Thompson also struck Juvenal on the forehead with a flashlight and he started bleeding. Juvenal stated that he was afraid and wanted to drive away in his truck. He tried to back up in his truck but instead put the truck into neutral; he did not know what happened, but the "truck went into the wrecker."

Juvenal testified that after his pickup truck "went into the wrecker," he heard Thompson hit and break the truck's passenger window with a flashlight. Juvenal testified that Thompson got into his truck and beat him, breaking his nose; during the struggle, Thompson broke the pickup truck's gear shift. According to Juvenal, Thompson dragged Juvenal out of his truck to a nearby dumpster and sat on him until the police arrived; Juvenal denied trying to run away. Juvenal denied touching Dion or Thompson that night. He also denied that his truck struck or touched the wrecker. However, Cardenas testified that Juvenal "slammed" into the wrecker with his pickup truck.

6

Dion testified that he did not remember the confrontation with Feliciano specifically, but he did remember that Feliciano was angry when he approached him. According to Dion, Feliciano either pushed or hit him; Dion pepper-sprayed Feliciano in response. Dion testified that he saw Juvenal's pickup truck coming at him as he was walking back to the wrecker. According to Dion, Juvenal's pickup truck hit the driver's side door of the wrecker after Dion jumped in the driver's seat and closed the door. Dion then jumped out of the wrecker's window onto the hood of Juvenal's truck and kicked the truck's windshield.

Dion testified that he saw Thompson and Juvenal struggling inside Juvenal's pickup truck. He testified that Thompson kicked Juvenal to the ground because Juvenal tried to run away, and kept Juvenal on the ground until the police arrived. Dion testified that police officers responding to the incident initially "leaned" toward arresting Dion and Thompson, but then decided against doing so after watching a video of the incident captured by the wrecker's cameras.

Thompson testified that he was checking for parking stickers on vehicles parked in the Charleston Court parking lot when he heard a "commotion" and walked back the wrecker. Thompson did not hear what Dion, Feliciano and Juvenal talked about when they first approached Dion. According to Thompson, Feliciano was hitting, pushing, and shoving Dion; Thompson tried to defuse the situation by getting between Dion and the brothers. Thompson acknowledged pushing or hitting "somebody;" he stated that Dion pepper-sprayed Feliciano and Feliciano ran away. Thompson denied hitting Feliciano with a flashlight and denied that Boyles had given him a flashlight; Thompson stated that Feliciano might have hit his head when he tried to run away after being pepper-sprayed.

Thompson testified that Juvenal backed up his pickup truck and drove it into the wrecker. Thompson testified that he was afraid Dion had been pinned between

7

the truck and the wrecker because could not see Dion when he heard the truck hit the wrecker. Thompson stated that he broke the passenger window to enter Juvenal's truck because Juvenal had locked the doors; he fought with Juvenal over the gear shift because Juvenal continued pushing on the gas pedal. According to Thompson, Juvenal tried running away but Thompson caught up with him, kicked him, and then sat on him until the police arrived.

Officer Syed Bukhari of the Houston Police Department testified that he arrived at the scene to relieve officers Caldwell and Villarreal, who had been dispatched to the scene to conduct an investigation. Bukhari testified that Caldwell and Villarreal already had interviewed Feliciano, Juvenal, Dion, Thompson, Boyles and several other witnesses, and had completed their investigation when he arrived. Caldwell and Villarreal informed Bukhari that they had contacted Assistant District Attorney Baker about the incident, and that Baker already had accepted charges against Juvenal for aggravated assault with a deadly weapon. Bukhari testified that he conducted his own investigation, interviewed everyone at the scene again except for Juvenal and Feliciano, who had been taken to the hospital, and completed his police report.

As part of the investigation, Bukhari stated that he reviewed the wrecker cameras' video recordings at the scene; the recordings clearly showed that Juvenal's truck rammed into the wrecker on the driver's side door, which caused the camera to shake. Bukhari concluded that "aggravated assault charges were correct." Bukhari testified that he saw all four angles on the video he reviewed at the scene. In contrast to the video Bukhari viewed at the scene, the video shown at trial was not a continuous video that showed all angles. Rather, it was a stop-frame video of inferior quality that showed a partial recording from two camera angles.

Dill testified that he believed his wrecker cameras recorded the entire

8

incident, but his employee was unsuccessful in downloading the recording after the incident. Dill claimed that he turned the "entire machine over to the District Attorney's Office to let them try to retrieve it."

Assistant District Attorney Ian Frazier McNeil, who later was assigned to handle Juvenal's aggravated assault with a deadly weapon charge, testified that the video was extracted at the District Attorney's office from the laptop of Dill's employee, Stacey Holland. McNeil also testified that he decided to re-file the felony case against Juvenal as a misdemeanor case after he investigated the case further because he believed there was sufficient evidence to go forward with a misdemeanor case. McNeil stated that he did not dismiss the case against Juvenal outright because he "felt it was more properly classified as a misdemeanor." McNeil testified that Juvenal agreed to a plea bargain on the misdemeanor case.

### PROCEDURAL BACKGROUND

The claims were tried to a jury from January 5, 2010 through January 15, 2010. The jury answered all 34 questions in the jury charge favorably for the Alvarados. Because resolution of this case turns in part on how the jury charge questions were formulated, we provide an overview of the questions and the jury's answers.

In Questions 1 through 6, the jury found that Dion and Thompson committed assault against Feliciano and Juvenal; Dion, Thompson, and Boyles assisted or encouraged the assault on Feliciano and Juvenal; and Dion, Thompson, Boyles were part of a conspiracy to commit assault on Feliciano and Juvenal. In Questions 7 through 9, the jury found that Thompson falsely imprisoned Juvenal; Dion and Boyles assisted and encouraged the false imprisonment of Juvenal; and Dion and Boyles were part of a conspiracy to falsely imprison Juvenal.

9

In Questions 10 through 12, the jury found that Dion, Thompson, Boyles, and Dill maliciously prosecuted Juvenal; Dion, Thompson, Boyles, and Dill assisted and encouraged the malicious prosecution of Juvenal; and Dion, Thompson, Boyles, and Dill were part of a conspiracy to maliciously prosecute Juvenal.

In Question 13, the jury found that Dill and Soon Phat, L.P. engaged in a joint enterprise.

In Questions 13A and 13B, the jury answered "no" to questions asking whether Dion and Thompson were justified in their use of force against Juvenal and Feliciano.

The jury awarded actual damages for assault in Questions 14 and 15; for false imprisonment in Question 16; and for malicious prosecution in Question 17. In Questions 18 through 23, the jury assessed exemplary damages in favor of Juvenal and Feliciano against Dion, Thompson, and Boyles in connection with the claims for assault, false imprisonment, and malicious prosecution. In Question 24, the jury assessed exemplary damages in favor of Juvenal against Dill in connection with the malicious prosecution claim.

In Question 25, the jury found that Dill was negligent in hiring, training, supervising, or retaining Thompson. In Question 26, the jury found that Soon Phat, L.P. was negligent in hiring, training, supervising, or retaining Boyles.

In Questions 27 and 28, the jury found by clear and convincing evidence that the harm Juvenal and Feliciano suffered in this case resulted from Dill's gross negligence. In Questions 29 and 30, the jury found by clear and convincing evidence that the harm Juvenal and Feliciano suffered in this case resulted from Soon Phat, L.P.'s gross negligence.

10

In Questions 31 and 32, the jury found that Thompson committed an aggravated assault on Juvenal and Feliciano. In Question 33, the jury found that, at the time Thompson committed the aggravated assault on Juvenal and Feliciano, (1) Thompson was "unfit" and Dill acted maliciously in employing or retaining him; or (2) Dill ratified or approved Thompson's aggravated assault. In Question 34, the jury found that, at the time Thompson committed the aggravated assault on Juvenal and Feliciano (1) Boyles was "unfit" and Soon Phat, L.P. acted maliciously in employing or retaining Boyles; (2) Boyles was employed in a managerial capacity and was acting in the scope of employment; or (3) Soon Phat, L.P. ratified or approved Boyles' actions.

The Charleston Court Appellants filed a combined motion for judgment notwithstanding the verdict, motion to disregard jury findings, and motion for new trial on March 4, 2010. Dion, Thompson, and Dill also filed a combined motion for judgment notwithstanding the verdict, motion to disregard jury findings, and motion for new trial on April 9, 2010.

The trial court held a hearing on the defendants' respective motions on April 30, 2010. Upon the trial court's request, the parties submitted letter briefs addressing whether Juvenal is "entitled to sustain an action against the Defendants for malicious [] prosecution of the felony charge of aggravated assault notwithstanding the fact that [Juvenal] ultimately pled guilty to a misdemeanor charge of criminal mischief" after the assistant district attorney dismissed the aggravated assault charge against Juvenal. This argument was raised by the Alvarados at the hearing.

After considering the parties' motions, responses, and letter briefs, the trial court signed an order on June 8, 2010 "specifically" granting "both motions to disregard and for judgment notwithstanding the verdict as to Plaintiff's claims for

11

malicious prosecution and all damages arising from those claims." The trial court's order also stated that the "parties agree that this matter presents a question of first impression and, having considered the law and the policy underlying a claim for malicious prosecution, the Court concludes that Plaintiff's malicious prosecution claims are foreclosed as a matter of law."

The trial court signed a final judgment assigning liability in light of the jury's verdict and the court's June 8 order. Accordingly, with regard to Feliciano's assault claim, the trial court ordered that (1) Dill, Thompson, Dion, Soon Phat, L.P., and Boyles, jointly and severally, pay Feliciano $86,920 in actual damages; (2) Thompson pay $10,000, Dion pay $7,500, and Boyles pay $5,000 in exemplary damages to Feliciano; (3) Dill, Thompson, Dion, Soon Phat, L.P., and Boyles, jointly and severally, pay Feliciano pre-judgment interest at a rate of five percent on the sum of $61,920; (4) Dill, Thompson, Dion, Soon Phat, L.P., and Boyles, jointly and severally, pay Feliciano post-judgment interest at a rate of five percent on the sum of $86,920; and (5) Feliciano recover post-judgment interest at a rate of five percent from Thompson on the sum of $10,000, from Dion on the sum of $7,500, and from Boyles on the sum of $5,000.

The trial court also ordered that Juvenal recover from (1) Dill, Thompson, Dion, Soon Phat, L.P., and Boyles, jointly and severally, $67,000 in actual damages for assault and $1,000 in actual damages for false imprisonment; (2) Thompson $10,000, Dion $7,500, and Boyles $5,000 in exemplary damages; (3) Dill, Thompson, Dion, Soon Phat, L.P., and Boyles, jointly and severally, pre-judgment interest at a rate of five percent on the sum of $52,000 for assault and on the sum of $1,000 for false imprisonment; (4) Dill, Thompson, Dion, Soon Phat, L.P., and Boyles, jointly and severally, post-judgment interest at a rate of five percent on the sum of $67,000 for assault and on the sum of $1,000 for false

12

imprisonment; and (5) post-judgment interest at a rate of five percent from Thompson on the sum of $10,000, from Dion on the sum of $7,500, and from Boyles on the sum of $5,000.

## STANDARDS OF REVIEW

A jury finding can be disregarded under Texas Rule of Civil Procedure 301 when it has no support in the evidence, or when the issue is immaterial. *C. & R. Transp., Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex. 1966). A jury finding is immaterial when (1) it should not have been submitted; or (2) although properly submitted, it has been rendered immaterial by other findings. *Id*.; *see also Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994) (same); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 752 (Tex. 1995) ("A jury question is considered immaterial when its answer can be found elsewhere in the verdict, or when its answer cannot alter the effect of the verdict.").

Legal insufficiency challenges may be sustained only when the record discloses one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005) (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362-63 (1960)).

We must consider evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller*, 168 S.W.3d at 822. If the evidence allows only one inference, neither jurors nor the reviewing court may disregard that evidence. *Id.* "The traditional scope of review does not disregard contrary evidence in every no evidence review if there is no

13

favorable evidence (situation (a) above), or if contrary evidence renders supporting evidence incompetent (situation (b) above) or conclusively establishes the opposite (situation (d) above)." *Id*. at 810-11. If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so. *Id*. at 822. Accordingly, the ultimate test for legal sufficiency always must focus on whether the evidence would enable reasonable and fair-minded jurors to reach the verdict under review. *Id*. at 827. Legal sufficiency review in the proper light must credit favorable evidence if reasonable jurors could do so, and must disregard contrary evidence unless reasonable jurors could not do so. *Id*. The reviewing court cannot substitute its judgment for that of the trier of fact if the evidence falls within this zone of reasonable disagreement. *Id*. at 822.

When the parties have not objected at trial to the substance of the law set forth in the jury charge, we review sufficiency of the evidence in light of legal standards contained in the unobjected-to charge. *See, e.g., Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) ("[I]t is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge.").

In reviewing factual sufficiency, we must consider and weigh all the evidence. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). We can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Id*.

## ISSUES PRESENTED

## I. Issues Raised by the Alvarados in No. 14-10-00603-CV

In their first three issues, the Alvarados argue that the trial court erred by

14

disregarding the jury findings as to Juvenal's malicious prosecution claim and all damages arising from that claim. The Alvarados assert in their fourth issue that the trial court erroneously excluded evidence that Boyles carried a firearm without authorization because this evidence was necessary for the submission of a jury question requesting punitive damages against Soon Phat, L.P.

## II. Issues Raised by Charleston Court in No. 14-10-00555-CV

In their first, third, fifth, sixth, eighth, and twelfth issues, the Charleston Court Appellants argue that the trial court erred by awarding damages jointly and severally against Soon Phat, L.P. on the Alvarados' assault and false imprisonment claims because (1) Soon Phat, L.P. was not mentioned in any questions addressing Juvenal and Feliciano's assaults and Juvenal's false imprisonment; (2) the jury did not find Soon Phat, L.P. vicariously liable for Boyles' actions relating to the assaults and false imprisonment; (3) the jury charge was defective and did not allow the jury to apportion responsibility among the plaintiffs and defendants as required by Section 33.003 of the Texas Civil Practice and Remedies Code; (4) the Alvarados' pleadings at trial did not assert any basis to hold Soon Phat, L.P. vicariously liable for the actions of Thompson and Dion; and (5) there was insufficient evidence to prove any element of a joint enterprise and support vicarious liability of Soon Phat, L.P.

In their second, fourth, eleventh, and thirteenth issues, the Charleston Court Appellants argue that the exemplary damages awards against Boyles are improper because (1) there was no jury finding of fraud, malice, or gross negligence attributable to Boyles; (2) there is insufficient evidence that Boyles acted fraudulently, maliciously, or was grossly negligent; and (3) "a court may not award exemplary damages against a defendant because of the criminal act of another."

In their seventh and ninth issues, the Charleston Court Appellants argue that

15

the evidence is legally and factually insufficient to support a damages award against Boyles for the assault of Juvenal and Feliciano and the false imprisonment of Juvenal. In their tenth issue, the Charleston Court Appellants claim that submission of Questions 2, 3, 5, 6, 8 and 9 constituted an impermissible comment on the evidence requiring reversal. In their fourteenth issue, the Charleston Court Appellants assert that the evidence is legally and factually insufficient to support the jury's "no" answers to Questions 13A and 13B, which asked whether Thompson and Dion were justified in using force against the Alvarados.

### III. Issues Raised by Dion, Thompson, and Dill in No. 14-11-00033-CV

In their first and third issues, Dion, Thompson, and Dill "adopt the arguments and authorities presented by" the Charleston Court Appellants in their brief, They further argue that the trial court erroneously awarded Feliciano damages for assault and Juvenal damages for assault and false imprisonment "from all defendants, jointly and severally," because (1) the jury charge did not require the jury to assign a numerical percentage of fault as required by Section 33.013 of the Civil Practice and Remedies Code; and (2) there is no evidence that Dill was individually or vicariously liable for the assaults or the false imprisonment.

In their second issue, Dion, Thompson, and Dill argue that the trial court erroneously entered an exemplary damages award against Thompson and Dion in favor of Feliciano because (1) the jury charge was defective; (2) there is no evidence of Dill, Dion and Thompson's net worth; and (3) alternatively, there is legally insufficient evidence that Thompson and Dion "acted with the requisite intent — *i.e.*, with fraud, malice, or gross negligence."

### ANALYSIS

We begin by addressing the issues raised by Juvenal and Feliciano. We then

16

address the issues raised by the Charleston Court Appellants. Finally, we address the issues raised by Dion, Thompson, and Dill.[2]

## I. Juvenal and Feliciano Alvarado

### A. Malicious Prosecution

The Alvarados argue that the trial court erred by disregarding the jury findings as to Juvenal's malicious prosecution claim and all damages arising from that claim because Juvenal proved each element of the malicious prosecution claim as a matter of law. The Charleston Court Appellants contend that the trial court properly disregarded these jury findings in light of Juvenal's subsequent plea bargain in connection with a misdemeanor criminal mischief charge arising from the same circumstances that gave rise to the initial felony charge of aggravated assault with a deadly weapon. Dill, Dion and Thompson adopt the Charleston Court Appellants' briefing with respect to the malicious prosecution claim.

"Malicious prosecution actions involve a delicate balance between society's interest in the efficient enforcement of the criminal law and the individual's interest in freedom from unjustifiable and oppressive criminal prosecution." *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997); *see also Browning-Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288, 290-91 (Tex. 1994). To prevail on a malicious prosecution claim, a plaintiff must establish (1) the commencement of a criminal prosecution against the plaintiff; (2) causation (initiation or procurement) of the action by the defendant; (3) termination of the

---

[2] The Alvarados also raise cross points in which they contend that the Charleston Court Appellants, Dill, Dion, and Thompson waived their respective appeals by moving for entry of judgment without qualification in conformity with the jury's verdict. The Charleston Court Appellants raise a cross point contending that the trial court erred in failing to rule on the Alvarados' request to file a fifth amended petition adding new claims. We discuss these cross-points below.

prosecution in the plaintiff's favor; (4) the plaintiff's innocence; (5) the absence of probable cause for the proceedings; (6) malice in filing the charge; and (7) damage to the plaintiff. *Id*.; *Davis v. Prosperity Bank*, 383 S.W.3d 795, 802 (Tex. App.— Houston [14th Dist.] 2012, no pet.).

The parties do not dispute that a criminal prosecution for a felony charge of aggravated assault with a deadly weapon was commenced against Juvenal. The dispositive issue here focuses on whether the prosecution terminated in Juvenal's favor given that (1) Juvenal initially was charged with a felony in district court on August 29, 2005; (2) the prosecutor filed a criminal information on March 22, 2006 under a new cause number in county criminal court charging Juvenal with criminal mischief, a misdemeanor; (3) the prosecutor filed an unconditional motion to dismiss the felony aggravated assault with a deadly weapon charge in district court on March 24, 2006; and (4) Juvenal subsequently pled guilty to the misdemeanor in exchange for the prosecutor's recommendation of three days in jail with credit for two, no fine, and no restitution.

The Alvarados stress that the time served in Juvenal's plea bargain related only to the misdemeanor offense because the felony charge had been dismissed before the plea bargain agreement was made. They also contend that criminal mischief is not a lesser included offense of aggravated assault with a deadly weapon. Additionally, they emphasize that Dion was the complainant in the aggravated assault case because Juvenal was charged with unlawfully, intentionally, and knowingly threatening Dion with imminent bodily injury by using his pickup truck as a deadly weapon. In contrast, Dill was the complainant in the criminal mischief case based upon damage of more than $500 but less than $1,500 to Dill's tow truck caused when Juvenal hit the tow truck with his pickup truck.

18

Termination of a prosecution in the plaintiff's favor does not require "a termination on the merits, e.g., a verdict of 'not guilty,' as a necessary element of a cause of action for malicious prosecution." *Davis v. City of San Antonio*, 752 S.W.2d 518, 523 (Tex. 1988). "Even when the termination is indecisive as to the accused's guilt, it is nevertheless favorable if the prosecution cannot be revived." *Id*. In keeping with this precept, courts hold that "a prosecution has been terminated in the accused's favor where the prosecutor has dismissed the charges" and no additional charges have been filed. *Izen v. Catalina*, 256 F.3d 324, 328 (5th Cir. 2001); *see also Thrift v. Hubbard*, 974 S.W.2d 70, 78 (Tex. App.—San Antonio 1998, pet. denied); *Leal v. Am. Nat'l Ins. Co.*, 928 S.W.2d 592, 597 (Tex. App.—Corpus Christi 1996, writ denied).

In this case, however, the prosecutor did not simply dismiss the felony charge. Instead, he filed an additional misdemeanor charge arising out of the same incident before dismissing the felony charge. McNeil testified that he decided to file a misdemeanor case after he investigated further because he believed there was sufficient evidence to go forward with a misdemeanor case. McNeil did not dismiss the case against Juvenal outright because he "felt it was more properly classified as a misdemeanor." McNeil testified that the filing of misdemeanor charges against Juvenal "wasn't intended to be" a finding of innocence.

Juvenal's subsequent plea bargain with respect to misdemeanor charges arising from the same incident brings this case within the rule that "a dismissal of a prosecution brought about by the procurement or compromise of the person therein accused is not such an end of the prosecution as will warrant an action of damages for malicious prosecution." *Sullivan v. O'Brien*, 85 S.W.2d 1106, 1115 (Tex. Civ. App.—San Antonio 1935, writ ref'd); *see also Martinez v. English*, 267 S.W.3d 521, 528 (Tex. App.—Austin 2008, pet. denied); *Ellis v. Sinton Sav. Ass'n*, 455

19

S.W.2d 834, 842 (Tex. Civ. App.—Corpus Christi 1970, writ ref'd n.r.e.); Restatement (Second) of Torts § 660(a) (1977); *cf. Bertuca v. Martinez*, No. 04-04-00926-CV, 2006 WL 397904, *3 (Tex. App.—San Antonio Feb. 22, 2006, no pet.) (dismissal of case based on prosecutor's determination that "sufficient punishment" already had been administered to malicious prosecution plaintiff was not a termination in plaintiff's favor). We believe this resolution strikes an appropriate balance among the competing interests implicated in a malicious prosecution claim and recognizes that "'[h]aving bought peace the accused may not thereafter assert that the proceedings have terminated in his favor.'" *Martinez*, 267 S.W.3d at 528 (quoting Restatement (Second) of Torts § 660 cmt. c (1977)).

In light of Juvenal's plea agreement, we conclude that the malicious prosecution claim was foreclosed as a matter of law because the prosecution did not terminate in Juvenal's favor. The trial court did not err by granting the motions for judgment notwithstanding the verdict and to disregard immaterial jury findings as to Juvenal's malicious prosecution claim. Accordingly, we overrule the Alvarados' first issue.

### B.    Assisting and Encouraging

The Alvarados contend that the trial court erred by disregarding "Jury Question 11, in which the jury found that Dion, Thompson, Boyles and Dill assisted or encouraged each other in the malicious prosecution of Juvenal" because there is sufficient evidence to support the jury's finding. The Alvarados argue that "[w]hen a defendant gives assistance or encouragement to a person committing a tort, and the assistance or encouragement is a substantial factor in causing the tort, the defendant is considered a tortfeasor and is responsible for the consequences of the tort."

Jury Question 11 was predicated on a "yes" answer to Question 10 and

20

asked the jury, "Did any of the following persons [Dion, Thompson, Boyles, Dill] assist or encourage the malicious prosecution of Juvenal Alvarado that you found in answer to Question 10?" The jury was instructed that to "'assist or encourage' an action" requires that "[t]he primary actor committed a wrongful act."

As stated in the jury charge and acknowledged by the Alvarados in their brief, to "assist or encourage" requires that a tort — malicious prosecution — was committed. Without a "primary actor" committing the tort of malicious prosecution, liability for assisting and encouraging a malicious prosecution cannot be imposed. As we have discussed in connection with issue one, a malicious prosecution claim is foreclosed here as a matter of law in light of the plea agreement. Therefore, Dion, Thompson, Boyles, or Dill could not have assisted or encouraged the malicious prosecution of Juvenal. The trial court did not err by disregarding Question 11 and granting the motions for judgment notwithstanding the verdict and to disregard jury findings. Accordingly, we overrule the Alvarados' second issue.

### C. Conspiracy

The Alvarados contend that the trial court erred by disregarding "Question 12, in which the jury found that Dion, Thompson, Boyles and Dill conspired to prosecute Juvenal" because there is sufficient evidence to support the jury's finding.

Jury Question 12 was predicated on a "yes" answer to Question 10 and asked the jury, "Were any of the following persons [Dion, Thompson, Boyles, Dill] part of a conspiracy to maliciously prosecute Juvenal Alvarado that you found in answer to Question 10?" The jury was instructed: "To be a part of a conspiracy, a person and another person or persons must have had knowledge of, agreed to, and intended a common objective or course of action that resulted in the

21

malicious prosecution of Juvenal Alvarado."

Based on the jury charge, to be a part of a conspiracy to malicious prosecution, the course of action taken must have resulted in the tort of malicious prosecution. Further, "conspiracy, generally defined as a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means, might be called a derivative tort" because the "defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). The underlying tort is malicious prosecution. We already have concluded that a malicious prosecution claim is foreclosed as a matter of law in this case; without an underlying tort for malicious prosecution, there is no claim for conspiracy. *See id.*; *Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 448 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (op. on reh'g). Therefore, Dion, Thompson, Boyles, or Dill could not have been "part of a conspiracy" to malicious prosecution of Juvenal. The trial court did not err by disregarding Question 12 and granting the motions for judgment notwithstanding the verdict and to disregard jury findings. Accordingly, we overrule the Alvarados' third issue.

## D. Exclusion of Evidence

The Alvarados assert that the trial court erred by excluding evidence that "Boyles was routinely armed on the premises of the Charleston Court Apartments, that she threatened the residents with her weapon, that on the night in question she gave Thompson her flashlight and her gun, but that the gun flew out of Thompson's hand, and that she pointed the gun at the residents in a threatening manner as she fled to her apartment to hide the weapon when the police arrived." They contend this evidence was admissible and pertinent to the submission of a

22

jury question seeking punitive damages against Soon Phat, L.P. Based on this complaint, the Alvarados request a new trial limited solely to the issue of punitive damages.

We reject this contention and the Alvarados' appellate complaint without regard to the claimed admissibility of this evidence because this court cannot remand for a new trial solely on punitive damages. *See Nowzaradan v. Ryans*, 347 S.W.3d 734, 739 (Tex. App.—Houston [14th Dist.] 2011, no pet.). "In 2000, the supreme court held that in order to achieve proportionality between actual and punitive damage awards, 'under *Moriel*, a jury must decide the amount of punitive damages based on the totality of the evidence from the liability phase as well as the punitive damages stage.'" *Id*. (quoting *Sw. Ref. Co. v. Bernal*, 22 S.W.3d 425, 433 (Tex. 2000)); *see also Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 30 (Tex. 1994). "It would be impossible to give effect to this language and remand only for a new trial regarding punitive damages." *Nowzaradan*, 347 S.W.3d at 739.

Accordingly, we overrule the Alvarados' fourth issue.[3]

## II. The Charleston Court Appellants

### A. No Waiver of Right to Appeal

As a threshold matter, we address the Alvarados' cross-point urging this court to dismiss the Charleston Court Appellants' appeal because they

---

[3] The Charleston Court Appellants argue that the trial court abused its discretion by "not ruling on the Alvarados' motion for leave to file their trial amendment to their petition alleging new causes of action, and by submitting questions to the jury that were not supported by the pleadings." The fifth amended petition "substituted joint enterprise as a theory of vicarious liability in place of joint venture" and "reframed Appellants' cause of action for assault as 'aggravated assault.'" Because the Charleston Court Appellants raise the trial amendment issue in its brief in cause number 14-10-00555-CV, we will consider this issue below in section II of our analysis.

23

"unreservedly invited the trial to enter the judgment it entered." Relying on *First Nat'l Bank of Beeville v. Fojtik*, 775 S.W.2d 632, 633 (Tex. 1998) (per curiam), the Alvarados contend that the Charleston Court Appellants waived an appeal because the "request to the trial court that it enter judgment [wa]s unqualified."

The Texas Supreme Court recognized in *Fojtik* that there must be "a method by which a party who desires to initiate the appellate process may move the trial court to render judgment without being bound by its terms." *Id*. at 633. The court held that the following statement was a proper reservation of a party's right to appeal: "While Plaintiffs disagree with the findings of the jury and feel there is a fatal defect which will support a new trial, in the event the Court is not inclined to grant a new trial prior to the entry of judgment, Plaintiffs pray the Court enter the following judgment. Plaintiffs agree only as to the form of the judgment but disagree and should not be construed as concurring with the content and result." *Id*.

Following *Fojtik*, we reject the Alvarados' assertion that the Charleston Court Appellants did not "express any disagreement with the content or result of the judgment [it] asked the trial court to enter." The response to the Alvarados' motion for entry of an amended judgment states as follows: "Although Defendants contend Plaintiffs are not entitled to any award, as outlined in Defendants' post-trial motions, they now file this response to Plaintiffs['] motion requesting the entry of the proposed amended Final Judgment . . . . Defendants ask this court to enter the attached proposed amended Final Judgment, incorporating the notations and changes this Court made." The attached proposed judgment stated that it was "Approved As To Form Only." We conclude that the Charleston Court Appellants sufficiently reserved their right to appeal the trial court judgment. We deny the Alvarados' motion to dismiss the Charleston Court Appellants' appeal and

24

overrule the Alvarados' cross-point.

### B. Soon Phat, L.P.'s Joint and Several Liability for Actual Damages

The final judgment assigns joint and several liability to Soon Phat, L.P. as the owner of the Charleston Court Apartments for actual damages awarded to Feliciano and Juvenal in connection with their assault claims, and for actual damages awarded to Juvenal in connection with his false imprisonment claim.

The jury found that Dion and Thompson assaulted Juvenal and Feliciano, and that Thompson falsely imprisoned Juvenal. The jury also found that Dion, Thompson, and Boyles assisted or encouraged the assaults, and conspired to commit the assaults. The jury further found that Dion and Boyles assisted or encouraged the false imprisonment of Juvenal, and conspired to commit false imprisonment.

On appeal, the Charleston Court Appellants challenge Soon Phat, L.P.'s joint and several liability for actual damages on these claims under the trial court's final judgment. The Charleston Court Appellants stress that the jury answered "yes" to Questions 1-9 addressing whether Dion, Thompson, and Boyles engaged in tortious conduct, assisted or encouraged such conduct, or conspired to commit such conduct. These questions did not ask whether Soon Phat, L.P. itself committed this conduct.

The Charleston Court Appellants contend there is no legal basis for imposing joint and several liability upon Soon Phat, L.P. arising from the individual tortious conduct of Dion, Thompson, or Boyles. These appellants also contend the jury charge was "fatally defective" because no proportionate responsibility question was submitted under Chapter 33 of the Civil Practices and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.001 *et seq.* (Vernon

2008 & Supp. 2012). But the Charleston Court Appellants neither objected to the omission of a proportionate responsibility question from the jury charge nor tendered a proposed proportionate responsibility question for submission. Therefore, the analysis on appeal does not focus on whether the trial court committed charge error by omitting a submission under Chapter 33 or whether such an omission necessitates a new trial. Instead, the appellate analysis focuses on whether the evidence viewed in light of the charge as submitted provides a route by which Soon Phat, L.P. can be held jointly and severally liable in the final judgment for the individual tortious conduct of Boyles, Dion, or Thompson.[4]

The Charleston Court Appellants contend that joint and several liability under the final judgment must rest on vicarious liability. Broadly speaking, vicarious liability principles impute liability arising from the conduct of an active tortfeasor to another party based upon a relationship between them. *See, e.g., Garza v. Exel Logistics, Inc.,* 161 S.W.3d 473, 481 (Tex. 2005) (citing *Wingfoot Enters., v. Alvarado*, 111 S.W.3d 134, 146 (Tex. 2003)); *see also St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 540 (Tex. 2002) (plurality) ("The common law has long recognized that liability for one person's fault may be imputed to another who is himself entirely without fault solely because of the relationship between them.").

---

[4] At the charge conference, counsel for the Charleston Court Appellants objected on no evidence grounds to Questions 2, 3, 5, 6, 8, 9, 10, 11, 12, 13, 23, 26, 29, 30, and 34. Counsel for the Charleston Court Appellants further objected that submission of questions for which there is no evidentiary support constituted a "comment on the weight of the evidence;" that Questions 2, 3, 5, 6, 11 and 12 were duplicative; that Question 10's definition of "probable cause" was erroneous; that Question 13 was not supported by pleadings; that Questions 22 and 23 were improperly predicated; and that Questions 31, 32, and 34 erroneously referenced a criminal offense of "aggravated assault" in a civil case. The trial court modified the predicating instructions for Questions 22 and 23 in response to the Charleston Court Appellants' objections to those questions, and with the Alvarados' agreement; otherwise, the trial court overruled the Charleston Court Appellants' objections listed above. Additionally, counsel for the Charleston Court Appellants objected as follows: "To the extent an agency relationship has to be found by the finder of fact as to any issue they have requested and it is not submitted by them, I object to their failure to submit it." The trial court did not make an express ruling on this latter objection.

Vicarious liability can arise under common law principles and by statute. *See, e.g., Garza*, 161 S.W.3d at 481.

The Alvarados contend that Soon Phat, L.P. is directly liable based upon its own conduct, and vicariously liable based upon conduct by other defendants with whom Soon Phat, L.P. has relationships. The Alvarados' arguments on appeal and the jury charge indicate that the effort to impose liability upon Soon Phat, L.P. rests at least in part on one particular form of vicarious liability — the doctrine of respondeat superior. This doctrine "holds the master liable for the torts of his servant committed in the course of his employment" and is "essentially a policy doctrine . . . ." *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 589 (Tex. 1964). "[E]xcept for acts personally directed by the principal, the liability of the master is founded upon the contractual arrangement with the servant, either expressed or implied which vests in him the right to control the details of the work." *Id.*; *see also Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984) (employer and employee were jointly and severally liable for tort committed by employee in the course and scope of his employment). "The theories of vicarious and joint and several liability are judicially created vehicles for enforcing remedies for wrongs committed." *Dutcher v. Owens*, 647 S.W.2d 948, 950-51 (Tex. 1983). "Justified on public policy grounds, they represent a deliberate allocation of risk." *Id.*; *see also Wolff*, 94 S.W.3d at 541.

"The typical respondeat superior claim involves an allegation of negligence on the part of the employee" occurring within the course and scope of the employee's employment. *Buck v. Blum*, 130 S.W.3d 285, 288 (Tex. App.— Houston [14th Dist.] 2004, no pet.). "It is not ordinarily within the scope of a servant's authority to commit an assault on a third person." *Tex. & Pac. Ry. Co. v. Hagenloh*, 151 Tex. 191, 247 S.W.2d 236, 239 (1952). However, an assault can be

27

considered to be "in the course and scope of employment when the nature of the employment necessitated the use of force (such as the duty to guard property) so that the use of force may be in furtherance of the employer's business even if more force than necessary is applied." *Buck*, 130 S.W.3d at 289 n.2 (citing *Hagenloh*, 247 S.W.2d at 239); *see also Durand v. Moore*, 879 S.W.2d 196, 199 (Tex. App.— Houston [14th Dist.] 1994, no writ) ("When an employee commits an assault, it is for the trier of fact to determine whether the employee ceased to act as an employee and acted instead upon his own responsibility."); *Tierra Drilling Corp. v. Detmar*, 666 S.W.2d 661, 662-63 (Tex. App.—Corpus Christi 1984, no writ) (no evidence supported finding that employee was acting within the course of his employment, in pursuit of his duties, or in the furtherance of Tierra's business when he assaulted co-worker).[5]

As submitted, the jury charge provided three routes by which the conduct of Dion, Thompson and Boyles potentially could give rise to tort liability on the part of Soon Phat, L.P.

The first route is Question 34, which states as follows:

QUESTION 34

At the time of the aggravated assault found by you in answer to Question 31 or 32 was Mesha Boyles:

---

[5] The jury charge does not contain a question asking whether the assault by Dion and Thompson was committed while they were in the course and scope of their employment with Dill. Nor did the charge ask whether Boyles was in the course and scope of her employment with Soon Phat, L.P. when she conspired with Dion and Thompson to commit the assault and assisted them in doing so. Similarly the charge did not contain a question asking whether the false imprisonment by Thompson occurred while he was in the course and scope of his employment with Dill. Nor did the charge contain a question asking whether Boyles was in the course and scope of her employment with Soon Phat, L.P. when she conspired to commit false imprisonment and assisted in falsely imprisoning Juvenal. The only references to "course and scope of employment" appear in Questions 29, 30, and 34.

28

(1) unfit and did Soon Phat, L.P. d/b/a Charleston Court Apartments act with malice in employing or retaining her?

OR

(2) employed in a managerial capacity and was acting in the scope of the employment;

OR

(3) did Soon Phat, L.P. d/b/a Charleston Court Apartments ratify or approve the act.

"Malice" means a specific intent to by the defendant to cause substantial injury or harm to the claimant.

Answer "Yes" or "No"

Answer: Yes

The predicating instruction directed the jury not to answer Question 34 unless it first answered "yes" to Questions 31 or 32, which asked whether Thompson committed an aggravated assault against Juvenal and Feliciano. In turn, Question 31 was predicated on a "yes" answer to Juvenal's assault claim submitted in Question 1, and Question 32 was predicated a "yes" answer to Feliciano's assault claim submitted in Question 4. Question 34 also was predicated on "yes" answers to Questions 2, 3, 5, 6, 8, 9, 10, 11 or 12.[6] The Alvarados contend that security guard Boyles' individual liability for assisting or encouraging Dion and Thompson in committing assault, and for conspiring with them to do so, is attributed to Soon Phat, L.P. in light of the jury's "yes" answer to Question 34.

The second route is Question 26, which states as follows:

QUESTION 26

Did the negligence if any, of Soon Phat, L.P. in hiring, training, supervising, or retaining Mesha Boyles proximately cause the

---

[6] Because Questions 31 and 32 addressed only aggravated assault, these questions and Question 34 are not referable to Juvenal's claim for false imprisonment submitted against Thompson in Question 7.

29

occurrence in question?

An employer has a nondelegable and absolute duty to exercise ordinary care to select careful and competent employees. An employer is negligent if the employer hires an incompetent or unfit employee whom the employer knows, or by the exercise of reasonable care should know, was incompetent or unfit.

Answer "Yes" or "No" with respect to the following:

Juvenal Alvarado Yes

Feliciano Alvarado Yes

The Alvarados argue that Boyles' individual liability for assisting or encouraging in the commission of assault and false imprisonment, and for conspiring to commit these torts, is attributed to Soon Phat, L.P. in light of the jury's "yes" answers to Question 26.

The third route is Question 13, which states as follows:

QUESTION 13

On the occasion in question were Robert Groce Dill d/b/a Arrow Towing Company and Soon Phat, L.P. d/b/a Charleston Court Apartments engaged in a joint enterprise?

A "joint enterprise" exists if the persons concerned have (1) an agreement, either express or implied, with respect to the enterprise or endeavor; (2) a common purpose; (3) a common business or pecuniary interest; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

Answer "Yes" or "No"

Answer: Yes

The Alvarados contend that Dill is liable for the individual tortious conduct of wrecker driver Dion and helper Thompson. For purposes of addressing the Charleston Court Appellants' challenges to the final judgment, we assume this is true. In turn, according to the Alvarados, the existence of a joint enterprise between Dill and Soon Phat, L.P. means that Dill's liability for the individual

30

conduct of Dion and Thompson also is attributed to Soon Phat, L.P.

With this backdrop, we examine the Charleston Court Appellants' challenges to the trial court's final judgment making Soon Phat, L.P. jointly and severally liable for the actual damages awarded to Feliciano and Juvenal in connection with claims for assault and false imprisonment.

### 1. Soon Phat, L.P.'s liability for assault

The Charleston Court Appellants contend that Soon Phat, L.P. cannot properly be subjected to joint and several liability for the assault damages awarded to Feliciano and Juvenal. We address this contention in light of the three potential routes to recovery against Soon Phat, L.P. provided under the jury charge.

### a. Question 34

The Charleston Court Appellants contend that Question 34 cannot serve as a basis for joint and several liability because the jury's "yes" answer to this question is immaterial, and because the answer is not supported by legally sufficient evidence. We agree that Question 34 does not provide a vehicle for imposing joint and several liability on Soon Phat, L.P. based on respondeat superior or other theories of liability when the sufficiency of the evidence is examined in light of the charge as given.

There is no evidence of "malice" as defined in Question 34(1). This question asks whether, at the time Thompson committed aggravated assault upon the Alvarados, Boyles was unfit and Soon Phat, L.P. acted with malice in employing or retaining Boyles. Malice is defined in the jury charge as "a specific intent to [sic] by the defendant to cause substantial injury or harm to the claimant." The Alvarados do not point to any evidence and we have found no evidence in the record that Soon Phat, L.P. had any intent to cause harm or injury to the Alvarados;

31

therefore, there is no evidence Soon Phat, L.P. acted with malice.

Question 34(2) requires a finding that Boyles was employed in a managerial capacity and acted in the scope of the employment at the time Thompson committed the aggravated assaults. Boyles was employed as a security guard to patrol the apartment complex at night and "call 911" in the event of an emergency. This is no evidence that Boyles was employed in a "managerial capacity" as required under Question 34(2). *See U-Haul Int'l, Inc. v. Waldrip,* 380 S.W.3d 118, 138 (Tex. 2012) (no evidence was proffered to establish that individual acted in a "managerial capacity" in absence of evidence that individual was a company officer; had authority to employ, direct, and discharge company employees; or managed a department or division of company).

Question 34(3) asks whether Soon Phat, L.P. ratified or approved "the act." Regardless of whether "the act" refers to assault, aggravated assault, aiding and abetting, or conspiracy, there is no evidence in the record that Soon Phat, L.P. ratified or approved any act. The Alvarados do not point to any evidence that could support a finding of ratification or approval with respect to Soon Phat, L.P.

Accordingly, Question 34 cannot serve as a basis to subject Soon Phat, L.P. to joint and several liability for the assault damages awarded to the Alvarados. Further, in light of this resolution, we need not address the Charleston Court Appellants' complaint that Question 34 and the references to aggravated assault were not supported by the Alvarados' pleadings.

### b. Question 26

The Charleston Court Appellants argue that "[t]here is no basis in the jury's verdict for an award of damages for assault from Charleston Court." They further argue that (1) "there was no finding by the jury that Charleston Court committed

the assault;" (2) "any liability attributable to Charleston Court must be vicarious;" and (3) "there was no question submitted to the jury as to whether Boyles was the agent of Charleston Court." In response, the Alvarados point to the negligent hiring submission in Question 26 as a basis for joint and several liability based on direct liability. We conclude that Question 26 cannot bear the weight that the Alvarados would have it carry.

Question 26 submits a negligent hiring claim. A claim of negligent hiring, supervision, or retention is not dependent upon a finding that the employee was acting in the course and scope of his employment when the tortious act occurred. *Wrenn v. G.A.T.X. Logistics, Inc.*, 73 S.W.3d 489, 496 (Tex. App.—Fort Worth 2002, no pet.); *Verinakis v. Med. Profiles, Inc.*, 987 S.W.2d 90, 97 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). An employer who negligently hires, retains, or supervises an incompetent or unfit individual may be directly liable to a third party whose injury was proximately caused by the employee's negligent or intentional act. *Wrenn*, 73 S.W.3d at 496; *Verinakis*, 987 S.W.2d at 97. A negligent hiring claim is based on an employer's direct negligence rather than the employer's vicarious liability for the torts of its employees. *Wrenn*, 73 S.W.3d at 496; *Verinakis*, 987 S.W.2d at 97.

The Texas Supreme Court has not "ruled definitively on the existence, elements, and scope" of negligent retention, supervision, training, and hiring claims. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 n.27 (Tex. 2010). The supreme court has stated as follows: "In a negligent-hiring or negligent-entrustment claim, a plaintiff must show that the risk that caused the entrustment or hiring to be negligent also proximately caused plaintiff's injuries." *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 240 (Tex. 2010) (citing *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 796 (Tex. 2006), *Doe v. Boys Clubs of Greater Dallas,*

33

*Inc.*, 907 S.W.2d 472, 477 (Tex. 1995), and *Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 596-97 (Tex. 1987)).

The jury answered "yes" to Question 26 asking whether Soon Phat, L.P.'s negligence in hiring, training, supervising, or retaining Boyles proximately caused "the occurrence in question." It is unclear whether "the occurrence in question" refers to the towing, the assaults, the false imprisonment, the conspiracy or some combination of events and actions. In any event, Question 26 does not ask if Soon Phat, L.P.'s negligent hiring proximately caused the Alvarados' ***injuries***.[7] There also was no damage question submitted in connection with Question 26. A direct liability theory predicated on negligent hiring, training, supervising, or retention — for which the jury found proximate cause of an unspecified "occurrence" rather than the Alvarados' injuries, and for which the jury was not asked to find damages or determine proportionate responsibility — does not support the trial court's final judgment making Soon Phat, L.P. jointly and severally liable for damages from assaults committed by others. *Cf. Lovelace v. Sabine Consol., Inc.*, 733 S.W.2d 648, 655 (Tex. App.—Houston [14th Dist.] 1987, writ denied) (judgment awarding punitive damages could not be affirmed in absence of separate finding of actual damages in tort).

Even if damage findings were to be deemed in support of the trial court's judgment under Texas Rule of Civil Procedure 279,[8] the trial court's judgment

---

[7] The Texas Pattern Jury Charges discuss potential problems with the use of the word occurrence rather than injury in 51.1, 61.1, 66.1 and 71.1, in connection with other causes of action and the proportionate responsibility statute. The Texas Pattern Jury Charges also discuss this issue in connection with 4.1, the general negligence issue. There is no PJC question for negligent hiring.

[8] Rule 279 provides: "When a ground of recovery or defense consists of more than one element, if one or more of such elements necessary to sustain such ground of recovery or defense, and necessarily referable thereto, are submitted to and found by the jury, and one or more of such elements are omitted from the charge, without request or objection, and there is

imposing joint and several liability on Soon Phat, L.P. nonetheless could not be affirmed on the basis of the jury's "yes" answer to Question 26. Such deemed findings would not serve as a basis for joint and several liability. Any damages in connection with negligent hiring would be attributed to Soon Phat, L.P. as direct liability based on upon its own negligent conduct — not based upon a relationship between Soon Phat, L.P. and Boyles that allows Boyles' tortious conduct and the consequences thereof to be attributed to Soon Phat, L.P. by way of joint and several liability. *See Wrenn*, 73 S.W.3d at 496; *Verinakis*, 987 S.W.2d at 97. Therefore, Question 26 does not provide a permissible route to the joint and several damages assigned against Soon Phat, L.P. in the trial court's final judgment.[9]

### c.      Question 13

The jury's finding in Question 13 that Dill d/b/a Arrow Towing and Soon Phat, L.P. were engaged in a joint enterprise cannot serve as basis for vicarious liability on the part of Soon Phat, L.P.

The supreme court has stated that "'the theory of joint enterprise is to make each party thereto the agent of the other and thereby to hold each responsible for the negligent act of the other.'" *Tex. Dept. of Transp. v. Able*, 35 S.W.3d 608, 613 (Tex. 2000) (quoting *Shoemaker v. Estate of Whistler*, 513 S.W.2d 10, 14 (Tex.

---

factually sufficient evidence to support a finding thereon, the trial court, at the request of either party, may after notice and hearing and at any time before the judgment is rendered, make and file written findings on such omitted element or elements in support of the judgment. If no such written findings are made, such omitted element or elements shall be deemed found by the court in such manner as to support the judgment." Tex. R. Civ. P. 279; *cf. Lovelace*, 733 S.W.2d at 655 ("An appellant cannot be held accountable for the failure of an appellee to secure separate jury findings upon which an accurate judgment could be based.")

[9]     Because Question 26's negligence submission does not support joint and several liability as to Soon Phat, L.P., we do not address Questions 29 and 30; these were gross negligence submissions predicated on "yes" answers to Question 26.

1974)); *cf. Sereau v. Exxonmobil Corp.*, 274 S.W.3d 206, 218 n.9 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("For the purposes of this appeal, we will assume, without deciding, that the theory of joint enterprise extends beyond negligence claims to include . . . fraud and contract allegations.").

The only negligence question submitted against Soon Phat, L.P. is Question 26 predicated on negligent hiring. For the reasons discussed above, the jury's "yes" answer to Question 26 cannot support the trial court's judgment making Soon Phat, L.P. jointly and severally liable for the Alvarados' damages. The same obstacles arise in connection with Question 25, the negligent hiring question addressing Dill; that question is worded in identical fashion to Question 26. Like Question 26, the jury's "yes" answer to Question 25 also cannot support the judgment as signed. No other negligence questions were submitted in the jury charge as to any defendant. Therefore, a "yes" answer to Question 13 addressing joint enterprise is not effective to make Soon Phat, L.P. responsible for Dill's negligence as found in Question 25 or to make Dill responsible for Soon Phat, L.P.'s negligence as found in Question 26.

Absent viable negligence claims that would support the trial court's judgment, assigning joint and several liability to Soon Phat, L.P. in the final judgment based on the "yes" answer to Question 13 would require a significant extension of joint enterprise principles under Texas law by stacking vicarious liability upon vicarious liability. The Alvarados ask this court to endorse the following stacking procedure: Dion and Thompson are liable because they assaulted Juvenal and Feliciano, and because they conspired and assisted in the assaults; Boyles is vicariously liable for the conduct of Dion and Thompson because she conspired with them to commit the assaults and assisted in the assaults; Soon Phat, L.P. is vicariously liable for Boyles' vicarious liability as her

employer; and Dill is vicariously liable for Soon Phat, L.P.'s vicarious liability by virtue of the joint enterprise. By similar reasoning, Dion and Thompson are directly liable for the assaults and vicariously liable as conspirators and persons who assisted in the assaults; Dill is vicariously liable for the conduct of Dion and Thompson; and Soon Phat, L.P. is vicariously liable for Dill's vicarious liability by virtue of the joint enterprise.

The outer limits of joint enterprise liability are far from settled under Texas law. *See, e.g., Wolff*, 94 S.W.3d at 530. But wherever those limits are located, the multiple layers of vicarious liability posited by the Alvarados are too attenuated to serve as a viable basis for the trial court's judgment based on the jury's "yes" answer to joint enterprise in Question 13.

### 2. Soon Phat, L.P.'s liability for false imprisonment

In its third and fifth issues, the Charleston Court Appellants assert that Soon Phat, L.P. cannot properly be held jointly and severally liable for the false imprisonment damages awarded to Juvenal. We again address this assertion in light of the three potential routes of recovery against Soon Phat, L.P. provided under the jury charge.

Question 34 is immaterial for purposes of making Soon Phat, L.P. jointly and severally liable for damages awarded for false imprisonment because Question 34 addresses only assaultive conduct.

For the same reasons we discussed above, Question 26 cannot serve as the basis for making Soon Phat, L.P. jointly and severally liable for damages awarded to Juvenal for false imprisonment. A negligent hiring claim is based on an employer's direct liability; it is not based on the employer's vicarious liability for the torts of its employees. *Wrenn*, 73 S.W.3d at 496; *Verinakis*, 987 S.W.2d at 97.

37

And any deemed finding of causation and damages for negligent hiring would not serve as a basis for vicarious liability, which is a separate basis of liability.

Finally, the jury's finding in Question 13 that Dill and Soon Phat, L.P. were engaged in a joint enterprise does not provide a vehicle for imposing joint and several liability on Soon Phat, L.P. for the false imprisonment damages awarded to Juvenal because joint enterprise liability is foreclosed as a matter of law.

Accordingly, we sustain issues one, three, and five as to Soon Phat, L.P's joint and several liability under the final judgment for damages awarded for assault and false imprisonment. The Alvarados take nothing on their assault and false imprisonment claims as to Soon Phat, L.P.[10]

## C.    Damages as to Boyles

The Charleston Court Appellants ask this court to delete from the trial court's final judgment the exemplary damage awards against Boyles for the assault of Feliciano and Juvenal and the false imprisonment of Juvenal. The Charleston Court Appellants also contend that any exemplary damage awards against Boyles must be deleted from the trial court's judgment because there is no evidence or insufficient evidence that Boyles acted fraudulently or maliciously or was grossly negligent in this case. The Charleston Court Appellants further contend that "[a]s a matter of law, Boyles' liability for exemplary damages for the assault should not have been submitted to the jury" because "a court may not award exemplary damages against a defendant because of the criminal act of another."

The Charleston Court Appellants lack standing to raise these issues on

---

[10] Because we have concluded that Soon Phat, L.P. is not jointly and severally liable for damages awarded in the final judgment for assault and false imprisonment, we need not address the Charleston Court Appellants' argument in issues seven and nine that actual damages for assault and false imprisonment improperly were awarded against Boyles individually.

38

appeal.  "Texas courts have long held that appealing parties may not complain of errors that do not injuriously affect them or that merely affect the rights of others." *Tex. Workers' Comp. Ins. Fund v. Mandlbauer*, 988 S.W.2d 750, 752 (Tex. 1999); *see also Buckholts Indep. Sch. Dist. v. Glaser*, 632 S.W.2d 146, 150 (Tex. 1982). Boyles did not appeal the trial court's judgment; and the Charleston Court Appellants' counsel stated during oral argument that he did not represent Boyles on appeal.  The exemplary damages were not awarded jointly and severally against Boyles and Soon Phat, L.P. or any other defendant.  Boyles alone is liable for the exemplary damages awards in this case.  Therefore, the Charleston Court Appellants are not adversely affected by the exemplary damages awards against Boyles individually.

Because the Charleston Court Appellants lack standing to complain on appeal about the exemplary damages awards against Boyles, we do not address the merits of their second, fourth, eleventh, and thirteenth issues.  Accordingly, we overrule these issues.[11]

### III.  Dill, Thompson, and Dion

These appellants challenge the imposition of joint and several liability on Dill for assault and false imprisonment; they also challenge the imposition of punitive damages as to Dion and Thompson.

#### A.  No Waiver of Right to Appeal

The Alvarados ask this court in a cross-point to dismiss the appeal of Dion, Thompson, and Dill.  The Alvarados contend that Dion, Thompson, and Dill are "estopped from attacking" the trial court's judgment because Dion, Thompson, and

---

[11]  In light of the resolution of issues discussed above, we do not address the Charleston Court Appellants' remaining issues and cross point asserted on appeal.

Dill, "along with Charleston Court, [] asked the trial court to enter the judgment at issue." Again relying on *Fojtik*, 775 S.W.2d at 633, the Alvarados contend that Dion, Thompson, and Dill waived their right to appeal the trial court's judgment because they "unreservedly invited the trial court to enter the judgment it entered."

The Alvarados incorrectly assert that Dion, Thompson, and Dill "along with Charleston Court" asked the trial court to enter the judgment at issue. Dion, Thompson, and Dill neither filed a motion for entry of judgment nor joined in the Charleston Court Appellants' request to enter a judgment. Dion, Thompson, and Dill did not waive their right to appeal the trial court's judgment. We overrule the Alvarados' cross-point and deny the Alvarados' motion to dismiss Dion's, Thompson's, and Dill's appeal.

## B.    Dill's Joint and Several Liability for Actual Damages

Dill challenges the final judgment's imposition of joint and several liability for actual damages arising from the Alvarados' claims for assault and false imprisonment. He argues there is no legal basis for imposing joint and several liability on him because of the individual tortious conduct of Dion, Thompson, or Boyles.

Dill also complains of the absence of a proportionate responsibility submission under Chapter 33 of the Civil Practice and Remedies Code. But Dill, like the Charleston Court Appellants, did not object on this basis during the charge conference or tender a requested submission under Chapter 33. Once again, the issue here is not whether the jury charge is erroneous due to the omission of a proportionate responsibility question; instead, the issue is whether the charge as submitted provides a means by which Dill can be held jointly and severally liable

40

for the individual tortious conduct of Dion, Thompson, or Boyles.[12]

We consider the same three routes to liability identified above in our analysis of Soon Phat L.P.'s liability. As to Dill, this analysis focuses on Question 33, Question 25, and Question 13.

The first route is Question 33, which states as follows:

QUESTION 33

At the time of the aggravated assault found by you in answer to Question 31 or 32 was Samuel Lee Thompson:

1) unfit and did Robert Groce Dill d/b/a Arrow Towing Company act with malice in employing or retaining him?

OR

(2) did Robert Groce Dill d/b/a Arrow Towing Company ratify or approve the act.

"Malice" means a specific intent to [sic] by the defendant to cause substantial injury or harm to the claimant.

Answer "Yes" or "No"

Answer: Yes

The predicating instruction directed the jury not to answer Question 33 unless it first answered "yes" to Questions 31 or 32, which asked whether Thompson committed aggravated assault against Juvenal and Feliciano. In turn, Question 31 was predicated on a "yes" answer to Juvenal's assault claim in Question 1, and Question 32 was predicated on a "yes" answer to Feliciano's assault claim

---

[12] At the charge conference, counsel for Dill, Dion, and Thompson objected on no evidence grounds to Questions 8, 9, 10, 11, 12, 18, 19, 20, 21, 24, 27, 28, and 33. Counsel for these appellants further objected on grounds that the submission of questions for which there was no evidentiary support constituted a "comment on the weight of the evidence;" that Questions 1, 2, 6, 7, 31 and 32 were duplicative; that Questions 31 and 32 erroneously referenced a criminal offense of "aggravated assault" in a civil case; and that "I don't think there's a proper predicate for exemplary damages" in relation to Questions 18 and 19. The trial court overruled these objections.

41

submitted in Question 4. The Alvarados argue that Thompson and Dion's individual liability for the assault of Juvenal and Feliciano and for the false imprisonment of Juvenal is attributed to Dill in light of the jury's "yes" answer to Question 33.

The second route is Question 25. In wording identical to Question 26 quoted above, Question 25 asks whether the "negligence, if any, of Robert Groce Dill, in hiring, training, supervising, or retaining Samuel Lee Thompson proximately cause[d] the occurrence in question . . . ." The Alvarados argue that Dion's and Thompson's individual liability for the commission of assault and false imprisonment is attributed to Dill in light of the affirmative finding in Question 25.

The third route is Question 13, the joint enterprise question quoted above. The Alvarados contend that Dill is "liable for Boyles' conduct as well as for that of Thompson and Dion, with whom Boyles is jointly and severally liable" because under "the theory of joint enterprise, each party involved in an enterprise is considered an agent of the other and becomes liable for the negligent acts of the other."

### 1. Dill's liability for assault

Dill contends that he cannot properly be subjected to joint and several liability for the assault damages awarded to Feliciano and Juvenal. Considering the evidence and the three potential routes to recovery against Dill provided under the jury charge, we conclude that Question 33 serves as a basis for Dill's joint and several liability.

The evidence in this case was disputed as to whether Dion and Thompson were Dill's employees, or whether they were independent contractors. Dill testified that Dion and Thompson were not his employees but were contract

42

laborers. However, Dill also testified that Thompson was a "fit employee" who did his job and "absolutely" followed instructions. Dill further testified that Dion provides great customer service and "has been an exemplary employee the entire time he's been with [Dill]." This is legally sufficient evidence of employee status.

There also is legally sufficient evidence of ratification and approval under Question 33. With regard to ratification and approval, Dill testified that he approved of Thompson's conduct. He was asked at trial by the Alvarados' counsel: "Sir, my question is, do you approve of everything that Sam Thompson did that night?" Dill answered "Yes." Dill also acknowledged that he never reprimanded Thompson for his conduct. This evidence establishes a valid legal basis for holding Dill jointly and severally liable based upon the conduct of Dion and Thompson. *See Household Credit Servs., Inc. v. Driscol*, 989 S.W.2d 72, 87 (Tex. App.—El Paso 1998, pet. denied) (creditor was jointly and severally liable for damages arising from torts committed against debtor by collection agency based on creditor's ratification of collection agency's conduct); *Gulf Oil Corp. v. Williams*, 642 S.W.2d 270, 272 (Tex. App.—Texarkana 1982, no writ) (service station owner was jointly and severally liable for damages arising from injury to customer who was shot by security guard, a borrowed employee, based on owner's ratification of guard's conduct); *Moore's Inc., v. Garcia*, 604 S.W.2d 261, 267 (Tex. App.—Corpus Christi 1980, writ ref'd n.r.e.) (store owner was jointly and severally liable for damages arising from false imprisonment and assault of a customer by an off-duty police officer employed as a store security guard based on ratification of guard's conduct).

Therefore, the final judgment properly holds Dill jointly and severally liable for the assault damages awarded in favor of Juvenal and Feliciano based on the jury's finding in Question 34, and we need not address the other possible routes to

Dill's joint and several liability for assault.  Accordingly, we overrule the first issue.

### 2.    Dill's liability for false imprisonment

Dill asserts that he cannot properly be held jointly and severally liable for the false imprisonment damages awarded to Juvenal.  We address this assertion in light of the evidence and the three potential routes of recovery against Dill provided under the jury charge.

Question 33 is immaterial for purposes of making Dill jointly and severally liable for damages awarded for false imprisonment because Question 33 addresses only assaultive conduct.  Thus, Question 33 does not provide a vehicle for imposing joint and several liability on Dill for damages awarded for false imprisonment.

Question 25 also does not provide a vehicle for making Dill jointly and severally liable for damages awarded to Juvenal for false imprisonment.  As we have stated already in our analysis of Soon Phat, L.P.'s liability, a negligent hiring claim is based on an employer's direct liability rather than the employer's vicarious liability for the torts of its employees.  *Wrenn*, 73 S.W.3d at 496; *Verinakis*, 987 S.W.2d at 97.  Question 25 tracks Question 26 in that it references proximate cause of an unspecified "occurrence in question" rather than Juvenal's injuries; and, like Question 26, there is no separate damage question by which the jury was asked to find the damage caused by Dill's negligent hiring.  For the reasons discussed above in connection with Soon Phat L.P., the negligent hiring question submitted in Question 25 cannot provide a basis for making Dill jointly and severally liable for the false imprisonment damages awarded to Juvenal.

Lastly, the jury's finding in Question 13 that Dill and Soon Phat, L.P. were

44

engaged in a joint enterprise cannot provide a basis for imposing joint and several liability on Dill for the false imprisonment damages awarded to Juvenal. As we have stated in our analysis above, joint enterprise liability is foreclosed as a matter of law.

Accordingly, we sustain issue three as to Dill's joint and several liability under the final judgment for damages awarded for false imprisonment.

### C. Liability of Dion and Thompson

#### 1. Liability for actual damages

Dion, Thompson, and Dill incorporate by reference the arguments asserted by the Charleston Court Appellants concerning whether Dion and Thompson were justified in their use of force against the Alvarados as addressed in Questions 13A and 13B. They do not otherwise challenge on appeal the legal and evidentiary bases for liability and actual damages for assault and false imprisonment as to Dion and Thompson as determined by the jury's answers to Questions 1-9.

Question 13A asked whether Dion was "justified in his use of force against the Plaintiffs." Question 13B asked whether Thompson was "justified in his use of force against the Plaintiffs." The jury answered "no" to Questions 13A and 13B. Both questions contained the following instruction:

> A person is justified in his use of force against another if he is acting in self-defense. He is acting in self-defense if he reasonably believed that force was immediately necessary to protect himself against the other's use or attempted use of unlawful force. A person is justified in using force to protect a third person if, under the circumstances, the defendant would have been justified in using force to protect himself, and he reasonably believed that his intervention was immediately necessary to protect the third person.
>
> The use of force against another is not justified in response to verbal provocation alone, or if the actor provoked the other's use or

45

attempted use of unlawful force, unless the actor abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter, and the other nevertheless continues or attempts to use unlawful force against the actor.

Questions 13A and 13B were predicated on "yes" answers in response to Question 1. In turn, Question 1 asked if Dion and Thompson committed an assault against Juvenal.

Dion and Thompson claim that they were justified in their use of force against the Alvarados and that the jury's "No" answers to Questions 13A and 13B were not supported by legally or factually sufficient evidence because Dion and Thompson "were justified in their use of force" and the evidence conclusively established the defense of justification. They claim that the Alvarados did not present any evidence to contradict (1) Bukhari's testimony that "in his opinion based on his experience as a police officer, Thompson and Dion's actions were justified;" (2) Thompson's testimony that he was fearful for Dion and that his actions were "for the purpose of saving [Dion]" because he did not know if Dion was injured; and (3) Dion's testimony that he "was in fear for his personal safety during the confrontation."

Bukhari testified that, if Dion and Thompson assaulted Juvenal, they acted in self-defense because Juvenal had tried to "ram" his truck into them. However, Bukhari never interviewed Juvenal or Feliciano to hear their side of the story and determine whether Juvenal had been attacked by Dion and Thompson first.

Juvenal testified that Feliciano approached Dion to show him towing papers, and that Thompson "came up" to Feliciano and struck him with a flashlight in the head. Juvenal attempted to take Feliciano to the apartment after Thompson had hit Feliciano; however, Thompson also hit Juvenal on the head with a flashlight.

46

Juvenal stated that he never touched Dion or Thompson; he also stated that both Dion and Thompson hit him, and that he "was full of blood from the blows they hit." He stated that he was afraid Dion and Thompson would beat him more, so he retreated to his truck and wanted to drive away, but he could not see and was not "conscious of [him]self anymore."

Juvenal testified that Thompson came to his truck, hit him hard, and broke his nose. Juvenal stated that he did not "try to run over" Dion; he never fought with Thompson over the gear shift or tried to put his truck in drive; he never rammed Dion's tow truck; his truck never touched the tow truck; and he did not know how his truck moved. Juvenal also testified that he never tried to run away but that Thompson and Dion dragged him out of his truck.

Juvenal's neighbor, Moises de la Torre, confirmed that Thompson first hit Feliciano with the flashlight and then hit Juvenal with the flashlight.

Examining the sufficiency of the evidence in light of the charge submitted, there is legally and factually sufficient evidence to support the jury's "No" answers to Questions 13A and 13B asking whether Dion and Thompson were justified in their use of force; we also conclude that the record does not support the assertion that justification was proven as a matter of law.

### 2. Liability for punitive damages

Dion, Thompson, and Dill argue that the exemplary damage awards in favor of Feliciano against Dion and Thompson are improper because "the jury question failed to properly apportion liability." They argue that "[i]n order to hold a defendant jointly and severally liable, the jury must have attributed greater than 50% o[f] responsibility to that defendant with respect to the cause of action, or that defendant must have acted in concert with another person to engage in certain

47

criminal conduct" as required by Section 33.013(b).

Dion, Thompson, and Dill did not object at the charge conference to the absence of a proportionate responsibility question; therefore, we do not address Dion, Thompson, and Dill's contention that submission of such a question was a prerequisite for an exemplary damages award. Additionally, the jury answered "yes" as to Dion and Thompson in response to Question 2, which asked whether Dion and Thompson assisted or encouraged the assault upon Juvenal. The jury answered the same in response to Question 3, which asked whether Dion and Thompson conspired to commit the assault upon Juvenal; in response to Question 5, which asked whether Dion and Thompson assisted or encouraged the assault upon Feliciano; and in response to Question 6, which asked whether Dion and Thompson conspired to commit the assault upon Feliciano.

Dion, Thompson, and Dill also argue that the exemplary damages awards are improper because "there is no evidence regarding the net worth of Defendants Dill, Dion, and Thompson, and without that type of evidence, the jury cannot apply the relevant factors."

We note that the trial court's final judgment does not order Dill to pay Feliciano exemplary damages; therefore, Dill's net worth is irrelevant and the exemplary damages award cannot be improper because there is no evidence of his net worth.

Evidence of a defendant's net worth is relevant in determining the amount of punitive damages because "the amount of punitive damages necessary to punish and deter wrongful conduct depends on the financial strength of the defendant. 'That which could be an enormous penalty to one may be but a mere annoyance to another.'" *Moriel*, 879 S.W.2d at 29 (quoting *Lunsford v. Morris*, 746 S .W.2d 471, 472 (Tex.1988), *overruled on other grounds by Walker v. Packer*, 827 S.W.2d

48

833, 842 (Tex.1992)). Nothing in Chapter 41 of the Texas Civil Practice and Remedies Code, *Moriel*, or other Texas case law indicates that evidence of a defendant's net worth is a necessary element for a plaintiff to recover any punitive damages. *Rangel v. Robinson*, No. 01-01-00318-CV, 2007 WL 625042, at *6 (Tex. App.—Houston [1st Dist.] March 01, 2007, pet. denied); *Durban v. Guajardo*, 79 S.W.3d 198, 210-11 (Tex. App.—Dallas 2002, no pet.). Instead, it is a relevant issue — as relevant to the defendant to prove low net worth as it is to the plaintiff to prove the defendant's high net worth. *Rangel*, 2007 WL 625042, at *6; *Durban*, 79 S.W.3d at 210-11.

The Alvaradaos were not required to introduce evidence of Dion's and Thompson's net worth in order to recover exemplary damages. *See Rangel*, 2007 WL 625042, at *7; *see also In re Jacobs*, 300 S.W.3d 35, 50, n.8 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding [mand. dismissed]) (recognizing that the "jury may still decide on the amount of punitive damages without considering evidence of the defendant's net worth"). Therefore, we reject Dion's, Thompson's, and Dill's argument that the exemplary damage awards against Dion and Thompson is improper because there is no evidence of their net worth.

Finally, Dion, Thompson, and Dill argue that there is legally insufficient evidence that Dion and Thompson "acted with the requisite intent — *i.e.*, with fraud, malice, or gross negligence — to merit any award of punitive damages under section 41.003(a) of the Texas Civil Practice and Remedies Code" for the assault of Feliciano.

Generally, exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm at issue results from (1) fraud; (2) malice; or (3) gross negligence. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a) (Vernon Supp. 2012). In reviewing an award for exemplary damages,

we conduct a legal sufficiency review under the "clear and convincing" evidence standard. *Waldrip*, 380 S.W.3d at 137. "'Clear and convincing' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Civ. Prac. & Rem. Code Ann. § 41.001(2) (Vernon 2008); *Waldrip*, 380 S.W.3d at 137. Thus, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 248 (Tex. 2008).

Fraud in this context "means fraud other than constructive fraud." *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.001(6) (Vernon 2008).

Malice is defined in this context as "specific intent by the defendant to cause substantial injury or harm to the claimant." *See id*. § 41.001(7). Specific intent means that the actor desires to cause the consequences of his act, or that he believes the consequences are substantially certain to result from it. *Seber v. Union Pac. R.R. Co.*, 350 S.W.3d 640, 654 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex. 1985)). Malice may be proven by direct or circumstantial evidence. *Id*.

Gross negligence consists of both objective and subjective elements. *Waldrip*, 380 S.W.3d at 137. Thus, "[p]laintiffs must prove by clear and convincing evidence that 1) when viewed objectively from the defendant's standpoint at the time of the event, the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and 2) the defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others." *Id*.; *see* Tex. Civ. Prac. & Rem. Code § 41.001(11). "Under the

objective component, 'extreme risk' is not a remote possibility or even a high probability of minor harm, but rather the likelihood of the plaintiff's serious injury." *Waldrip*, 380 S.W.3d at 137. "The subjective prong, in turn, requires that the defendant knew about the risk, but that the defendant's acts or omissions demonstrated indifference to the consequences of its acts." *Id*. at 137-38.

The charge submitted in this case does not contain a question asking the jury to determine whether the Alvarados proved by clear and convincing evidence that Feliciano's harm resulted from fraud, malice, or gross negligence. The parties do not complain on appeal about the absence of such a submission; the parties challenge only the legal sufficiency of evidence to establish fraud, malice, or gross negligence. In light of the jury's exemplary damages awards against Dion and Thompson for the assault of Feliciano, a finding by clear and convincing evidence that the harm to Feliciano resulted from fraud, malice, or gross negligence is deemed under Texas Rule of Civil Procedure 279 if it is supported by evidence. *See* Tex. R. Civ. P. 279.

The evidence supports a finding that Dion and Thompson acted with malice in this case.

One of Juvenal's party guests, Irene Cardenas, testified that after Dion attempted to tow Feliciano's truck, Feliciano approached Dion to ask him why he wanted to tow his truck. Feliciano never touched Dion or Thompson. Irene testified that Dion and Thompson got on top of Feliciano and pepper sprayed him. At first, Thompson beat Feliciano; then, both Dion and Thompson beat Feliciano. Feliciano was bleeding.

Moises de la Torre, testified that Dion and Thompson pepper sprayed Feliciano. Moises testified that he saw Boyles give a 20-inch flashlight to Thompson, and Thompson hit Feliciano on the forehead with that flashlight;

51

Feliciano was bleeding.  Moises testified that Thompson sprayed Feliciano after he was hit with the flashlight and was bleeding.  Moises later saw Thompson also strike Juvenal with the same flashlight.

Juvenal testified that Feliciano approached Dion to show him papers indicating that Feliciano's truck had already been towed once that evening.  Juvenal stated that Thompson just "came up" to Feliciano and struck him with a flashlight in the head.  Juvenal testified that "he was going to get [Feliciano] to take him to the apartment . . . because he couldn't see anything" but Thompson struck Juvenal on the forehead with the flashlight.  Juvenal stated he was bleeding "a lot," "was blind," "wasn't conscious of [him]self anymore," and retreated to his truck because he was afraid.

Another party guest, Javier Cardenas, testified that Feliciano approached Dion after Dion attempted to tow Feliciano's truck.  Cardenas testified that, although Feliciano never touched Dion, Thompson and Dion pepper sprayed Feliciano and Dion hit Feliciano in the head with a flashlight; Feliciano was "bleeding a lot" and he was "getting beat up."

Feliciano testified that when he approached Dion to ask him why he wanted to tow his truck, Dion told Feliciano to "get out of here, son of a bitch."  Feliciano testified that Thompson and Dion then pepper sprayed him, and Thompson hit him in the head with a flashlight.  Feliciano stated that he experienced "intolerable" burning after being pepper-sprayed on his head and chest, and some of his chest skin peeled off.  He stated that it felt like "a thunder bolt" when he was hit with the flashlight and it "just knocked [him] out."  Feliciano testified that he "felt" Dion and Thompson "coming at" him, "spraying" him and "hitting" him.

The video that captured part of the scene that night showed Dion holding a large flashlight behind his back and, a few instances later, showed Boyles holding

a large flashlight in her hands; the jury was free to conclude that the flashlight Dion held behind his back was the same large flashlight Boyles carried.

Feliciano's injury was substantial, requiring him to go to the hospital and receive 14 staples on his head. Feliciano could not work for one week, and he continues to have vision problem. A photo of Feliciano showing the staples on his head was introduced into evidence. The jury also heard that Feliciano continues to have a "cut" the size of his finger on his head as a result of his injury. There is evidence that both Dion and Thompson hit Feliciano in the head with a 20-inch flashlight Boyles had given to Thompson. Thompson acknowledged that the 20-inch flashlight Boyles was seen carrying in the video could be a deadly weapon. A person can reasonably anticipate that a severe injury is substantially certain to result from a strike with a 20-inch flashlight.

Based on the record before us, we conclude that there was at least legally sufficient evidence to support a finding that Feliciano's harm resulted from Dion's and Thompson's malice because the evidence allowed the jury to form a firm belief that Dion and Thompson specifically intended to cause substantial injury to Feliciano. Accordingly, we overrule the second issue.

## CONCLUSION

We overrule the Alvarados' issues in Cause No. 14-10-00603-CV; sustain the Charleston Court Appellants first, third, and fifth issues in Cause No. 14-10-00555-CV as to Soon Phat, L.P.'s joint and several liability under the final judgment for damages awarded for assault and false imprisonment; and sustain Dill's, Dion's, and Thompson's third issue in Cause No. 14-11-00033-CV as to Dill's joint and several liability under the final judgment for damages awarded for false imprisonment. We overrule the Alvarados' cross points seeking dismissal of the appeals brought by the Charleston Court Appellants, Dill, Dion, and

53

Thompson, and deny the accompanying motion to dismiss. We reverse the trial court judgment's awards of (1) actual damages, pre-judgment interest, and post-judgment interest for assault and false imprisonment against Soon Phat, L.P., and (2) actual damages, pre-judgment interest, and post-judgment interest for false imprisonment against Dill; we render judgment that the Alvarados take nothing in that regard. We affirm the trial court judgment in all other respects.


/s/  William J. Boyce
     Justice


Panel consists of Justices Boyce, Christopher and Jamison.