**Motion for Rehearing Denied; Opinion of June 26, 2014 Withdrawn; Affirmed in Part, Reversed and Remanded in Part, and Opinion filed July 24, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00515-CV

---

## MINDI M., INDIVIDUALLY AND AS NEXT FRIEND OF S.M., A CHILD, Appellant

### V.

## THE FLAGSHIP HOTEL, LTD, FLAGSHIP HOSPITALITY, INC., INDIVIDUALLY AND D/B/A FLAGSHIP HOTEL, Appellees

---

### On Appeal from the 405th District Court
### Galveston County, Texas
### Trial Court Cause No. 10-CV-2369

---

### SUBSTITUTE OPINION

After considering the motion for rehearing, our judgment in this case remains unchanged; however, to address points raised in the motion, we withdraw our opinion from June 26, 2014, and issue this substitute opinion in its place. We deny the motion as moot.

Mindi M. sued the Flagship Hotel and a related entity (collectively, the "Hotel") after her minor son, S.M., was sexually abused in the Hotel by a member of the Hotel's staff. Mindi asserted claims sounding in both tort and contract, but the trial court dismissed them all by way of summary judgment. On appeal, we hold that the trial court erred by dismissing a claim for negligent hiring, retention, and supervision. Based on our review of the record, we conclude that there is more than a scintilla of evidence to show that the child's injuries were proximately caused by a breach of the Hotel's duty of reasonable care. As to this cause of action only, we reverse the trial court's judgment and remand for additional proceedings consistent with this opinion. In all other respects, we affirm.

## BACKGROUND

Mindi's ex-husband and his two sons took a vacation to Galveston Island in the summer of 2008; Mindi did not accompany them. The family chose to stay at the Hotel, which markets itself specifically towards vacationing families. As they were checking into the Hotel, Mindi's older son, S.M., noticed that the Hotel's bellman was sending him nonverbal signals from his post at the main entrance. The bellman was nodding his head upwards and "mouthing words" in S.M.'s direction. S.M. ignored the bellman and went to his room.

Later that day, S.M. left the Hotel to take a walk on the beach. The bellman found S.M. wandering the premises outside, alone and smoking a cigarette. S.M. was just fifteen years old. The bellman approached S.M. and told him that there was a better place inside the Hotel where he could finish his cigarette. The bellman led S.M. to the Hotel's banquet room, which was locked and empty, but the bellman knew a way inside. Once he and S.M. had entered the room, the bellman secured the doors and turned off the lights.

S.M. felt uncomfortable inside the dark room. He sat down at a table near the entrance, where there was a small window allowing light to pass through. The bellman took a seat nearby and removed his pants, exposing his penis. The bellman offered S.M. money to touch his penis, but S.M. refused and tried to leave. The bellman then grabbed S.M. and forcibly put S.M.'s hand on his penis. S.M. quickly withdrew his hand and the bellman began to masturbate. The bellman eventually ejaculated on the table in front of them. As the bellman stood up, S.M. ran to the door and fled. Police were called shortly thereafter.

At the time of the incident, the bellman had been working for the Hotel for less than three months. He was hired at the beginning of the summer season upon the recommendation of another Hotel employee. No criminal background check had been performed. Had the Hotel inquired into the bellman's criminal history, it would have discovered a lengthy record of arrests and convictions. Before his hiring, the bellman had four convictions for possession of a controlled substance, two convictions for assault causing bodily injury, one conviction for evading arrest, and another conviction for theft.

Records from the Texas Department of Criminal Justice revealed other bad acts including robbery, aggravated assault with a deadly weapon, auto theft, and criminal trespassing. These acts were allegedly committed when the bellman was a juvenile. The records also identified two instances of indecency with a child. On one occasion, the bellman allegedly fondled the breasts of a fifteen-year-old girl, and on the other, he exposed himself to a fourteen-year-old girl. The records do not contain dates for these offenses, but the chronology suggests that they occurred sometime between 1990 and 2005. The records further disclose at least six citations for sexual misconduct, all occurring between 1994 and 2002 when the bellman was incarcerated.

Mindi filed this lawsuit on behalf of herself and her son, asserting a primary cause of action for negligent hiring, retention, and supervision. Additional claims for breach of contract and gross negligence were also raised. In her request for relief, Mindi sought exemplary damages and mental anguish damages, among others.

The Hotel moved for summary judgment on traditional and no-evidence grounds. In its traditional motion, the Hotel asserted that Mindi's negligence-based claim should fail because the Hotel had no duty to perform a criminal background check on its employees. In its no-evidence motion, the Hotel asserted that Mindi had no evidence in support of all of her claims, including negligence. The Hotel also challenged the legal theories for any recovery of exemplary damages and mental anguish damages. Mindi filed a response, but the trial court granted summary judgment to the Hotel and dismissed the suit. Mindi now appeals.

## STANDARD OF REVIEW

We review the trial court's summary judgment de novo. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In a traditional motion for summary judgment, the movant carries the burden of showing that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). Once the movant produces sufficient evidence conclusively establishing its right to summary judgment, the burden of proof shifts to the nonmovant to present evidence sufficient to raise a fact issue. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). We consider all of the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

4

In a no-evidence motion for summary judgment, the movant asserts that there is no evidence of one or more essential elements of the claims for which the nonmovant bears the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The burden rests with the nonmovant to present evidence raising a genuine issue of material fact as to the elements specified in the motion. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). We will sustain a no-evidence motion for summary judgment when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). The evidence is insufficient if it is so weak as to do no more than create a mere surmise or suspicion that the challenged fact exists. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009).

## NEGLIGENCE

### I.    The Hotel's No-Evidence Motion

We begin with the Hotel's no-evidence motion and the arguments regarding Mindi's claim for negligent hiring, retention, and supervision. We first note that this is not the type of tort that depends on proof of an employee performing a negligent or intentional act within the course of his employment. *See Verinakis v. Med. Profiles, Inc.*, 987 S.W.2d 90, 97 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). This tort arises instead from the simple negligence of the employer. An employer is negligent if the employer hires, retains, or supervises an employee whom the employer knows, or by the exercise of reasonable care should have known, is unfit or incompetent, and whose unfitness or incompetence creates an unreasonable risk of harm to others because of the

employee's job-related duties. *See Soon Phat, L.P. v. Alvarado*, 396 S.W.3d 78, 100–01 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *CoTemp, Inc. v. Houston W. Corp.*, 222 S.W.3d 487, 492 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (plurality op.).

As with any negligence case, the plaintiff must prove the existence of a legal duty, a breach of that duty, and damages proximately caused as a result of the breach. *See IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). When a claim of negligent hiring is based on a failure to screen, the plaintiff must further show that a reasonable employer would not have hired the employee had a background check been performed, or that a background check would have put the employer on notice that hiring the employee would create an unreasonable risk of harm to others. *See TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 240 (Tex. 2010); *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 796–97 (Tex. 2006).

## Duty

The Hotel's no-evidence motion attacks every element of Mindi's negligence cause of action. Beginning with duty, the Hotel asserts that Mindi has no evidence that "the employer owed the plaintiff a legal duty to hire, supervise, train, or retain competent employees."

The existence of a duty is a question of law for the court to decide. *See Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 53 (Tex. 1997). Contrary to the Hotel's suggestions, we have routinely recognized that an employer has a duty to hire competent employees. *See, e.g.*, *Soon Phat*, 396 S.W.3d at 100–01; *CoTemp*, 222 S.W.3d at 492; *Verinakis*, 987 S.W.2d at 97. The Texas Supreme Court has also observed that this duty is "absolute" and "nondelegable." *See Fort Worth Elevators Co. v. Russell*, 123 Tex. 128, 135–36, 70 S.W.2d 397, 401 (1934), *overruled on other grounds by Wright v. Gifford-Hill & Co.*, 725 S.W.2d 712 (Tex. 1987). Based on our established precedent, we

6

conclude that when an employer such as the Hotel undertakes to hire an employee, the employer must exercise reasonable care to see that the employee is competent and fit for the job.

**Breach**

To support a finding of breach, Mindi produced evidence from a security expert who explained the operations of a reasonable hotel. The expert asserted that "[i]t is a generally accepted practice in private industry, including hospitality, to perform extensive pre-employment background checks, including, but not limited to, criminal history checks of applicants whose eventual positions will give them unsupervised access to guests and/or guest rooms." According to the expert, these positions include that of a bellman.

The Hotel did not perform any sort of pre-employment background check in this case. Instead, it relied solely on the recommendation of another employee when it hired the bellman. The Hotel suggests that it acted reasonably because the industry standard only requires background checks on upper-level employees, such as managers. But, "an industry's standard of care is not dispositive of due care," and the Hotel's evidence on industry standards happens to be contested. *See Shadday v. Omni Hotels Mgmt. Corp.*, 477 F.3d 511, 514 (7th Cir. 2007) (Posner, J.). Based on the testimony from Mindi's security expert, a jury could determine that the Hotel did not act as a reasonable hotel should. Accordingly, there is more than a scintilla of evidence to show that the Hotel breached its duty of care.[1]

---

[1] The Hotel asserts in its motion for rehearing that there is no competent evidence that it breached a duty of care. The Hotel takes issue with our reliance on the security expert's report, claiming that the report "is hearsay and inadmissible because it contains the opinions of an expert designated solely as a consulting expert." We perceive two problems with the Hotel's argument. First, the record does not reveal that the Hotel made a hearsay objection in the trial court, or that the trial court ever ruled on such an objection. The Hotel's original brief on submission is also completely silent on this point.

7

## Causation

The Hotel asserts that there is no evidence that S.M.'s injuries, if any, were proximately caused by a breach of its duty of care. The elements of proximate cause are cause in fact and foreseeability. *See Doe v. Boys Club of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). Cause in fact means that the act or omission was a substantial factor in bringing about the injury, and without it harm would not have occurred. *See Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992). Foreseeability means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act or omission created for others. *See D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). This test requires "only that the general danger, not the exact sequence of events that produced the harm, be foreseeable." *See Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998); *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

Mindi raised a fact question as to whether the Hotel's failure to screen was the cause in fact of S.M.'s injuries. When confronted with the bellman's criminal record, the Hotel's manager testified that she never would have hired the bellman because of the risks he posed to guests, and to children in particular.

---

Second, the Hotel refers to a rule of discovery, rather than a rule of evidence, to show that the expert report is inadmissible. The Hotel cites Rule 192.3(e) of the Texas Rules of Civil Procedure, which provides that the opinions of a consulting expert are not discoverable unless the opinions are reviewed by a testifying expert. Even if we assumed for the sake of argument that the security expert was a consulting expert rather than a testifying expert, the Hotel does not dispute that Mindi designated another person as a testifying expert, and the testifying expert expressly stated in his report that he reviewed the opinions of the consulting expert. The testifying expert also testified in a deposition that he believed that the Hotel had breached its duty of care by failing to conduct a pre-employment background check. In support of this conclusion, the testifying expert asserted that guests have an expectation of safety when they stay in a hotel, and a background check is "the most basic thing" a hotel can do to meet that expectation. Because the Hotel in this case conducted no background check, we conclude that there is more than enough evidence to support a finding of breach.

8

The Hotel contends that it could not have foreseen an attack on S.M. because, even if a background check had been performed, it would not have revealed "any prior arrests or convictions for sexual assault or sexual misconduct." As an initial matter, we disagree with the notion that intentional misconduct is foreseeable only with formal proof of an arrest or conviction for a specific type of offense. The Texas Supreme Court has recognized that a risk of harm may be foreseeable based solely on the knowledge that a person has been accused of intentional misconduct. *See Golden Spread Council, Inc. No. 562 of the Boy Scouts of Am. v. Akins*, 926 S.W.2d 287, 290–92 (Tex. 1996) (children complained that a scoutmaster had been molesting young boys). The relevant inquiry is whether "anything found in a background check" would have placed the employer on notice that hiring the employee would create an unreasonable risk of harm to others. *See TXI Transp. Co.*, 306 S.W.3d at 240.

Mindi produced more than a scintilla of evidence to show that her son's injuries were proximately caused by the Hotel's failure to screen. The bellman's criminal records revealed recent convictions in 2004 and 2007 for assault causing bodily injury. Other records from the Texas Department of Criminal Justice showed that the bellman had been cited at least six times for sexual misconduct between 1994 and 2002, during the time that he was incarcerated. The same records also contained two allegations of indecency with a child, and in one of these allegations, the bellman was specifically accused of having exposed himself to a fourteen-year-old girl. Although no date was attached to this particular allegation, the Hotel's manager agreed that the event most likely occurred before the bellman was hired, considering the overall chronology of the records. Based on all of this evidence, the Hotel could have reasonably foreseen that the bellman might commit similar acts of physical or sexual misconduct if he were afforded

9

a special opportunity for such misconduct.[2] *See Golden Spread Council*, 926 S.W.2d at 290–92 (citing Restatement (Second) of Torts § 302B, cmt. e, ¶ D).

## Damages

The Hotel finally asserts that there is no evidence of damages, specifically mental anguish and pain and suffering. Although Mindi responded to both of these damages points in the trial court, she has only appealed the issue of mental anguish. We accordingly limit our review to just this measure of actual damages.

Generally, mental anguish is only compensable if it causes a substantial disruption in daily routine or a high degree of mental pain and distress. *See Hancock v. Variyam*, 400 S.W.3d 59, 68 (Tex. 2013). To support an award of mental anguish damages, there must be evidence of the nature, duration, and severity of the mental anguish. *See Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995). The evidence must also demonstrate "more than mere worry, anxiety, vexation, embarrassment, or anger." *Id*.

Mindi produced the deposition testimony of S.M.'s psychologist to support her son's claim for mental anguish damages. According to the psychologist, S.M. exhibited numerous symptoms consistent with posttraumatic stress disorder. These symptoms included "intrusive, disturbing recollections of the event, recurrent distressing dreams,

---

[2] The Hotel raises another point for the first time on rehearing, claiming that we may not consider the report from the Texas Department of Criminal Justice because it would not have been available at the time the bellman was hired. Assuming that this were true, there is no dispute that the Hotel could have obtained a list of the bellman's criminal convictions from the Texas Department of Public Safety. Had the Hotel performed this most basic criminal background check, it would have discovered two previous convictions for assault. Based on these previous convictions alone, the Hotel could have reasonably foreseen "the general danger" of hiring the bellman and his subsequent assault on S.M. *See Timberwalk Apartments*, 972 S.W.2d at 756 (the test for foreseeability requires only that the general danger be foreseeable, not the exact sequence of events that produced the harm); *see also* Tex. Penal Code § 22.01(a)(3) (a person commits an assault if the person "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative").

and intense emotional reactions when confronted by triggers that are reminiscent of the event." S.M. felt terrified after the incident "because he was afraid the man knew where he lived and might come after him." The psychologist also found that the incident had made S.M. hypervigilant and emotionally detached.

The psychologist further noted that S.M. has experienced some difficulty in coming to terms with his sexual abuse. Before the incident, S.M. struggled somewhat with depression and drugs, but after the abuse, his drug dependencies were greatly exacerbated. S.M. began using hard drugs, including methamphetamines, "to escape his thoughts and numb his emotional pain." He eventually entered a rehabilitation center, where counselors addressed his substance abuse and his depression, but not the trauma from the sexual abuse. S.M. was discharged and remained sober for several weeks, but then he relapsed.

The psychologist ultimately concluded that S.M. still has "significant psychological difficulties as a result of the sexual assault." She recommended a treatment plan that included weekly therapy sessions over a period of two years. We conclude that this testimony represents some evidence of the high degree of mental pain and distress needed to support a claim for mental anguish damages. *See Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 233 (Tex. 2011) (in case where cemetery operator moved a casket without the family's consent, there was sufficient evidence to support widow's claim of mental anguish where widow testified that she could not sleep, had burning sensation in her stomach, was fearful of what might happen to her when she was buried, and required medication for anxiety and depression); *Adams v. YMCA of San Antonio*, 265 S.W.3d 915, 918 (Tex. 2008) (per curiam) (in case where a child was sexually abused by a camp counselor, there was sufficient evidence to support award of mental anguish damages where expert testified that the child experienced "phobic anxiety" and engaged in other repressive behaviors).

11

Viewing the evidence in the light most favorable to the nonmovant, we conclude that Mindi raised a fact issue to support every element of her negligence-based claim. Therefore, we hold that the trial court erred by dismissing the claim on no-evidence grounds.

## II. The Hotel's Traditional Motion

We briefly respond to the Hotel's traditional motion for summary judgment, which contains an additional argument regarding the existence of a legal duty. The Hotel contends that it is entitled to judgment as a matter of law because no court in Texas has yet decided that a hotel or other innkeeper owes a duty, categorically, to conduct a background check on prospective employees. In the absence of such a court decision, the Hotel argues that no duty exists.

The Hotel's reasoning is not dispositive. The court determines the applicable duty, and we have consistently held in negligent hiring cases that the employer's duty is one of reasonable care. *See Soon Phat*, 396 S.W.3d at 100–01; *CoTemp*, 222 S.W.3d at 492; *Verinakis*, 987 S.W.2d at 97; *accord Scott Fetzer Co. v. Read*, 945 S.W.2d 854, 866 (Tex. App.—Austin 1997) (the employer "had a duty to take reasonable precautions to prevent or deter its distributors from hiring persons with histories of crime, violence, or sexually deviant behavior"), *aff'd*, 990 S.W.2d 732 (Tex. 1998). We have no reason for imposing a more onerous duty in cases involving hotels, and we expressly disavow any notion of having done so here.

The Hotel argues in its motion for rehearing that our opinion imposes an "extreme duty" on all employers to screen their employees for histories of sexual misconduct. We do not believe that a duty of reasonable care is "extreme," nor does it necessarily require that all employers conduct extensive background checks on prospective employees. Consider the following passage from *Ponticas v. K.M.S. Investments*, a case from the Supreme Court of Minnesota that bears many similarities to Mindi's:

If the employer has made adequate inquiry or otherwise has a reasonably sufficient basis to conclude the employee is reliable and fit for the job, no affirmative duty rests on him to investigate the possibility that the applicant has a criminal record. There are many persons in Minnesota who have prior criminal records but who are now good citizens and competent and reliable employees. Were we to hold that an employer can never hire a person with a criminal record at the risk of later being held liable for the employee's assault, it would offend our civilized concept that society must make a reasonable effort to rehabilitate those who have erred so they can be assimilated into the community. Moreover, a rule mandating an independent criminal history investigation would counter the many worthwhile efforts of individuals, organizations and employers to aid former offenders to re-establish good citizenship, the *sine qua non* of which is gainful and productive employment. Liability of an employer is not to be predicated solely on failure to investigate [the] criminal history of an applicant, but rather, in the totality of the circumstances surrounding the hiring, whether the employer exercised reasonable care.

*Ponticas v. K.M.S. Invs.*, 331 N.W.2d 907, 913 (Minn. 1983) (discussing the liability of an employer who hired an apartment manager without conducting a criminal background check in a suit where the apartment manager sexually assaulted an apartment tenant).

This reasoning is consistent with Texas case law for claims involving negligent hiring. *See Guidry v. Nat'l Freight, Inc.*, 944 S.W.2d 807, 810 (Tex. App.—Austin 1997, no writ) (rejecting argument that trucking company owed a duty to screen prospective employees for criminal offenses unrelated to the duties of a long-haul driver). If an employer has a duty to exercise reasonable care in the selection of employees, the duty exists to protect others from unreasonable risks of harm. Typically, the scope of an employer's inquiry will turn on the risks associated with the employee's job-related duties, not just the bare fact that the employee may come into contact with members of the public. A jury in this case could easily determine that the Hotel acted reasonably by hiring the bellman because he was recommended by another employee. The personal recommendation was at least some evidence that the Hotel had received

13

reasonable assurances that the bellman was reliable, fit for the job, and posed no risk to others.

A jury could also determine that a background check would have been reasonable in this case because of the bellman's special access to guests, their rooms, and other private areas of the Hotel that presented opportunities for misconduct. The risks associated with that degree of access and opportunity are not common in other settings and industries, and the Hotel is wrong to suggest that our opinion necessarily imposes a new burden on all employers, across the board, to screen their employees for histories of sexual misconduct. Whatever the case may be, we leave for the finder of fact to determine what is reasonable under the circumstances in the hiring practices of the employer. Because there is nothing new about this duty, we reject the Hotel's argument on rehearing that we have mandated detailed investigations into all prospective employees.

## BREACH OF CONTRACT

We now consider Mindi's claim for breach of contract. In her live pleading, Mindi alleged that the Hotel owed a contractual obligation to provide S.M. with a quiet, safe, and peaceful environment, "free of assault, sexual or otherwise, and/or injury of being a victim of any misdemeanor or felony act." The Hotel moved for summary judgment on no-evidence grounds, challenging whether there was any evidence to support either the existence of a contract or a breach of that contract.

Mindi argues that a valid, enforceable contract was created when S.M.'s father paid the Hotel in exchange for a key to a private room. Mindi has not produced a written copy of this contract, nor has she identified any promises made by the Hotel during this exchange. In her briefing, Mindi simply argues that the Hotel breached a contract when it violated an "implied" obligation to protect its guests from crime and injury.

14

The duty proposed by Mindi is not recognized under Texas law. A hotel or innkeeper is not an insurer of its guests or their safety. *See Walkoviak v. Hilton Hotels Corp.*, 580 S.W.2d 623, 625 (Tex. Civ. App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.); *Nixon v. Royal Coach Inn of Houston*, 464 S.W.2d 900, 902 (Tex. Civ. App.—Houston [14th Dist.] 1971, no writ). A hotel's responsibility to its guests is limited to the exercise of reasonable care, and this duty is imposed by law, not contract. *See Burrous v. Knotts*, 482 S.W.2d 358, 360 (Tex. Civ. App.—Tyler, no writ). Because Mindi has not produced any evidence that the Hotel breached a duty independent from one sounding in tort, the trial court correctly granted summary judgment on her breach of contract claim. *See Clancy v. Barker*, 131 F. 161, 166 (8th Cir. 1904) (rejecting a claim that a hotel breached a contract by failing to meet an implied duty to protect the guest against the willful or negligent acts of the hotel's employee); *Richardson v. Bigelow Mgmt., Inc.*, No. 05-06-00213-CV, 2007 WL 1139775, at \*4 (Tex. App.—Dallas Apr. 18, 2007, no pet.) (mem. op.) (rejecting a breach of contract claim against a hotel where the guest's allegation of property damage sounded in tort, not contract).

## GROSS NEGLIGENCE

To recover on a claim of gross negligence, the plaintiff must prove two elements: (1) viewed from the standpoint of the defendant at the time of the occurrence, the defendant's act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. *See* Tex. Civ. Prac. & Rem. Code § 41.001(11); *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001). Extreme risk does not mean a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff. *See U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012). Actual awareness

15

focuses on the defendant's state of mind. The plaintiff must prove that the defendant knew about the peril but did not care. *See La.-Pac. Corp. v. Andrade*, 19 S.W.3d 245, 246–47 (Tex. 1999).

The Hotel asserted in its motion for summary judgment that Mindi had no evidence to support either element of gross negligence. In response, Mindi cited testimony from a hotel manager that it would be a "good practice" to conduct a background check on all employees. Mindi also claimed that the hotel manager was aware of the extreme risks of hiring this bellman in particular, but Mindi cited to no affidavit, deposition, or written discovery in support of this assertion. Based on our review of the record, the evidence conclusively showed that the Hotel lacked actual knowledge that the bellman had the propensity to assault a member of the public, whether physically or sexually. Mindi did not produce any evidence that the Hotel had an actual, subjective awareness that hiring the bellman would create any risk of harm to others, much less an extreme risk. Accordingly, the Hotel was entitled to summary judgment on this claim.

## OTHER DAMAGES ISSUES

### I. Exemplary Damages

Chapter 41 of the Civil Practice and Remedies Code governs the recovery of exemplary damages. Section 41.005 provides: "In an action arising from harm resulting from an assault, theft, or other criminal act, a court may not award exemplary damages against a defendant because of the criminal act of another." The statute provides a limited exception if the criminal act was committed by an employee of the defendant. *See* Tex. Civ. Prac. & Rem. Code § 41.005(b)(1). In such cases, the plaintiff may recover exemplary damages only if:

(1) the principal authorized the doing and the manner of the act;

(2) the agent was unfit and the principal acted with malice in employing or retaining him;

(3) the agent was employed in a managerial capacity and was acting in the scope of employment; or

(4) the employer or a manager of the employer ratified or approved the act.

*Id.* § 41.005(c).

The Hotel moved for summary judgment on traditional grounds, arguing that the evidence conclusively negated all four methods of proof. Mindi responded to that argument in the trial court, but she also raised a claim that exemplary damages might be recoverable under an alternate statute. She cited Section 41.003, which provides that exemplary damages may be awarded if there is clear and convincing evidence that the claimant was harmed because of the defendant's gross negligence. *Id.* § 41.003(a)(3). Unlike Section 41.005, this statute authorizes the recovery of damages without requiring the claimant to prove that his injuries were proximately caused by the criminal acts of the defendant's employee.

Mindi does not challenge the trial court's judgment on any theory relating to Section 41.005. On appeal, her brief is completely silent on those arguments asserted by the Hotel. Mindi limits her appeal to arguing instead that exemplary damages are available under Section 41.003. But even if we assumed that exemplary damages were controlled by Section 41.003 rather than Section 41.005, Mindi has still not produced any evidence of gross negligence. The request for exemplary damages must fail as a matter of law.

## II.    Mindi's Mental Anguish Damages

The final issue we consider is a separate claim for mental anguish asserted by Mindi herself. Mindi alleged that she suffered such damages as a result of the Hotel's negligence. The Hotel moved for summary judgment, arguing that it owed her no duty.

Mental anguish damages are compensable in virtually all personal injury cases, but a claimant's right to recover such damages is limited if she has not suffered a physical injury as a result of the defendant's breach. *See Motor Express, Inc. v. Rodriguez*, 925 S.W.2d 638, 639 (Tex. 1996) (per curiam); *Krishnan v. Sepulveda*, 916 S.W.2d 478, 481 (Tex. 1995). Without proof of a physical injury, the claimant must generally bring a case that falls into one of three categories where mental anguish damages are permitted. *See City of Tyler v. Likes*, 962 S.W.2d 489, 495–96 (Tex. 1997). The first category is for claims that the defendant has engaged in intentional or malicious conduct, such as assault and battery or defamation. *See id.* at 495; *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627, 630 (Tex. 1967). Mindi has not alleged an intentional tort, so this category is not applicable.

The second category involves claims where mental anguish damages are the foreseeable result of a breach of a duty arising out of a special relationship. *See Likes*, 962 S.W.2d at 496. These include the physician-patient relationship and a very limited number of contracts dealing with intensely emotional noncommercial subjects, such as preparing a corpse for burial. *Id.* Here, there is no showing that the Hotel had a contract or a special relationship with Mindi, who was not even a guest of the Hotel at the time of the incident.

The third category is reserved for particularly shocking and disturbing events, where mental anguish is a highly foreseeable result. *Id.* These include suits for wrongful death and actions for bystander recovery for a close family member's serious injury. *Id.* The sexual abuse in this case is certainly shocking, but Mindi was not a bystander when it occurred, and there is no dispute that S.M. survived the abuse.

Texas does not recognize a general legal duty to avoid negligently inflicting mental anguish on another. *Id.* at 494; *Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex. 1993). Mindi has not alleged any claim in which the Hotel owed her a duty or in which she, as

18

opposed to her son, would be entitled to recover damages for mental anguish. The trial court correctly granted summary judgment to the Hotel on this point.

## CONCLUSION

We conclude that Mindi has a viable claim sounding in negligence for damages sustained by her son. As to this specific cause of action, the summary judgment is reversed and the cause is remanded for additional proceedings consistent with this opinion. In all other respects, the trial court's judgment is affirmed.


/s/    Tracy Christopher
       Justice


Panel consists of Justices Boyce, Christopher, and Brown.