**Affirmed and Memorandum Opinion filed August 1, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-17-01008-CV

## ROSA ESCALONA, Appellant

## V.

## MC CHARTER, LLC AND MICHAEL CHAVEZ, Appellees

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2015-71124A**

## MEMORANDUM OPINION

Appellant Rosa Escalona challenges the no-evidence summary judgment rendered in favor of appellees, MC Charter, LLC and Michael Chavez, on her negligence, defamation, and tortious interference with contract claims. Escalona contends the trial court erred in granting appellees' motion because she produced sufficient evidence to show that a genuine issue of material fact existed for each of her challenged claims. We hold the trial court did not err by granting the appellees' no-evidence motion for summary judgment because Escalona failed to

produce more than a scintilla of evidence as to the each of the elements of the causes of action in her claims that were challenged by appellees in their motion. We therefore affirm the trial court's no-evidence summary judgment as to both appellees.

## BACKGROUND

Escalona worked as a driver for MC Charter, a charter bus company. Escalona grew unhappy with the perceived "negative attitude and growing hostility" displayed by Grace Hernandez, another MC Charter employee and alleged wife of Michael Chavez, the sole owner of MC Charter.[1] Escalona therefore decided to change jobs. Escalona found a job as a driver for AFC Corporate Transportation.

Christina Lichtenstein worked as AFC's "HR manager" when Escalona was hired as a driver. One of Lichtenstein's job duties was to perform background checks on new hires such as Escalona. According to Lichtenstein, once she obtained the new hire's driver's license, she would check the driver's criminal history and driving record. She would also check with former employers to make certain the new hire did not "have any positive drug screens or anything of that nature."

According to Lichtenstein, Escalona started working for AFC before the background check was completed, "pending a negative drug screen." As part of checking Escalona's background, Lichtenstein sent a former employer questionnaire to MC Charter, as well as her other former employers. While Lichtenstein received prompt negative responses from Escalona's other former-employers, she did not receive a timely response from MC Charter. Lichtenstein

---

[1] Grace Hernandez was also a defendant in the trial court. She is not a party to this appeal.

then made numerous telephone calls to MC Charter trying to get a response to AFC's questionnaire. Lichtenstein eventually received MC Charter's completed questionnaire regarding Escalona's prior employment. On the completed form, dated May 5, 2015, MC Charter answered "yes" to the question, "Did this employee have alcohol tests with a result of 0.04 or higher?" The completed questionnaire was signed by Hernandez.

When she received MC Charter's completed questionnaire, Lichtenstein met with Escalona. When asked about the positive test response, Escalona was "shocked," and denied that she had ever had a positive drug or alcohol test. When Escalona could not provide a form certifying that she had successfully completed a drug or alcohol "recovery program," Lichtenstein placed Escalona on suspension, telling her that she could not let her "drive or work here until I get this figured out." Lichtenstein explained that AFC paid drivers such as Escalona for each trip worked as a driver, and she did not know how frequently Escalona would have worked but for the suspension.

Faced with Escalona's denial that she had had a previous positive drug or alcohol test, Lichtenstein contacted MC Charter again to verify that the questionnaire had been correctly filled out. Lichtenstein tried to contact MC Charter numerous times, but she was not successful until a "few weeks later." Lichtenstein eventually talked to Hernandez. When asked if the positive response on the questionnaire was correct, Hernandez responded that "she would check because she was not sure at the moment." When they talked again, Lichtenstein asked if there were any "type of results that she would be able to send over?" Hernandez answered "no," but then said she would check again with the drug screen facility and get back to Lichtenstein. When she once again spoke with Hernandez, "the results were different and she did tell me that she made a

mistake." Lichtenstein received a new completed questionnaire from MC Charter on May 18, 2015, thirteen days after the initial questionnaire was sent. On that form, MC Charter answered "No" to the question asking: "Did this employee have alcohol tests with a result of 0.04 or higher?" The May 18 questionnaire was once again signed by Hernandez.

Lichtenstein was asked during her deposition if anyone had ever previously contacted her because they were confused by the alcohol-test question. She responded that she had not. Lichtenstein also testified that, based on her years of experience working in "HR" at AFC, they were required to ask prior employers about whether new employees had had prior positive alcohol tests. Lichtenstein also testified that the meaning of the question was commonly understood in the transportation industry as asking whether a person had ever had a positive alcohol test showing alcohol in their system while working for a specific employer.

Chavez testified that he was the sole owner of MC Charter. According to Chavez, Hernandez completed the May 5 AFC questionnaire while he was out of the office on a business trip. Chavez further explained that Hernandez was not authorized to fill out the questionnaire and that she was disciplined as a result of her doing so. Once Chavez returned to the office, he found the completed AFC questionnaire sitting on his desk. According to Chavez, this occurred "around May 13." Chavez also learned that AFC was requesting further information regarding Escalona and that the May 5 answer was not correct. Chavez testified during his deposition that he then instructed Hernandez to fill out and send back a corrected form.[2] Chavez did not recall the exact date that the corrected form was sent to AFC. The corrected questionnaire was the May 18, 2015 form mentioned above.

[2] In his answers to Escalona's interrogatories, Chavez stated that in response to learning Hernandez had incorrectly filled out the AFC questionnaire, he instructed Hernandez to stop contacting AFC concerning Escalona and to let him handle the situation.

Chavez explained that he believed the AFC questionnaire was confusing because it did not include any limitation as to dates or any reference to the Federal Motor Carrier regulations. As a result, Chavez testified that because they had Escalona's driving records showing a previous "DWI," the original answer was not necessarily incorrect. Chavez continued that since Hernandez filled the questionnaire out alone, she possibly could have gotten confused about what AFC was asking. Finally, Chavez explained that MC Charter changed the answer after Lichtenstein and Hernandez had communicated, and Lichtenstein clarified the type of information AFC was inquiring about.

Escalona subsequently sued Hernandez, MC Charter, and Chavez alleging claims for negligence, defamation, tortious interference with contract, and breach of contract. Subsequent to filing suit, Escalona learned that MC Charter had submitted an employment verification form in addition to the questionnaire. Hernandez, in addition to answering the questions posed on the form, wrote three comments on the employment verification form. Hernandez stated that Escalona (1) had abandoned a charter, (2) had damaged two motor vehicles, and (3) was deficient in filling out her log books. None of these responses, however, were the basis of AFC suspending Escalona. Nearly two years later, MC Charter and Chavez filed a motion for partial no-evidence summary judgment on Escalona's claims against them for negligence, defamation, and tortious interference. The trial court granted appellees' motion. It then severed those claims making the no-evidence summary judgment final. Escalona appealed soon thereafter.

## ANALYSIS

Escalona raises three issues on appeal challenging the trial court's summary judgment on her causes of action. We address each issue in turn.

## I. Standard of review

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving all doubts in the nonmovant's favor. *Dias v. Goodman Mfg. Co., L.P.*, 214 S.W.3d 672, 675-76 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). A movant may obtain a no-evidence summary judgment if there is no evidence of one or more essential elements of a claim on which the nonmovant has the burden of proof. Tex. R. Civ. P. 166a(i).

We sustain a no-evidence summary judgment when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). If the nonmovant produces more than a scintilla of evidence to raise a genuine issue of material fact, the trial court cannot grant a no-evidence motion for summary judgment. Tex. R. Civ. P. 166a(i). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions as to the existence of the vital fact. *Dworschak v. Transocean Offshore Deepwater Drilling, Inc.*, 352 S.W.3d 191, 196 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

## II. The trial court did not err when it granted appellees' no-evidence motion for summary judgment on Escalona's negligence-based claims.

Escalona's live pleading when the trial court granted appellees' summary judgment motion was her Fourth Amended Petition. In that petition, Escalona alleged a cause of action against MC Charter for negligent hiring or supervision of

Hernandez. Escalona further alleged that Chavez was negligent when he breached "a duty to use ordinary care in making representations and in ascertaining the accuracy of the information given to others." The only damages Escalona alleged she suffered as a result of appellees' alleged negligence were the wages she would have received as a result of her employment agreement with AFC but for the suspension, and for the emotional distress and mental anguish she allegedly experienced as a result.

In their no-evidence motion for summary judgment, MC Charter and Chavez argued that the economic loss rule bars Escalona's negligence claims against them because she produced no summary-judgment evidence of damages to her person or property. In response to appellees' motion, Escalona points to her lost earnings as a result of being suspended by AFC and she also alleges she experienced past and future mental anguish as a result of the incident. We conclude that neither creates a genuine issue of material fact on the challenged damages element of her negligence claims against appellees. *See Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001) ("To sustain a negligence action, the plaintiff must produce evidence of a legal duty owed by the defendant to the plaintiff, a breach of that duty, and damages proximately caused by that breach."); *Garrett v. Graham*, No. 14-16-00609-CV, 2017 WL 3927499, at *2 (Tex. App.—Houston [14th Dist.] Sept. 7, 2017, no pet.) (mem. op.) ("To prove a cause of action for negligent hiring or supervision, the plaintiff must show that the employer's breach proximately caused the plaintiff's injuries.").

The Dallas Court of Appeals recently addressed a case involving similar facts. The court began by observing that "the economic loss rule is a doctrine that limits the recovery of purely economic damages in an action for negligence." *Clark v. PFPP Ltd. P'ship*, 455 S.W.3d 283, 287 (Tex. App.—Dallas 2015, no

7

pet.). The court then addressed the application of the economic loss rule in a negligent hiring or supervision case. In rejecting the plaintiff's arguments that the trial court had erred when it granted the defendant's motion for summary judgment, the appellate court stated the following:

> Here, the factual basis of Clark's claims against all the defendants was that, based on misrepresentations made by Santoy, she agreed to buy the truck and that, by selling her a stolen truck, Santoy failed to abide by the terms of the contract between them. Clark's claim against Planet Dodge was premised on it allegedly negligently hiring, supervising, or retaining an employee who was allegedly involved in removing the truck [that was sold to Clark] from its premises. However, the only injury Clark claimed due to Planet Dodge's allegedly negligent conduct was the purely economic harm she suffered when Santoy breached the contract. Under these circumstances, the economic loss rule bars Clark from recovering this loss from Planet Dodge based on a negligent hiring, supervision, and retention claim. Accordingly, based on the facts in this case, we conclude the trial court did not err by granting summary judgment in favor of Planet Dodge on the ground Clark has not suffered a physical injury from its alleged negligent hiring, supervision, and retention of its employees. We resolve Clark's sole issue against her and affirm the trial court's judgment.

*Id.* at 289 (internal citations omitted). Like the plaintiff in *Clark,* with the exception of mental-anguish damages, which we address below, Escalona's only alleged damages were economic, the wages she would have received as a result of her employment agreement with AFC. The economic loss rule bars recovery of those damages under her negligent-hiring claim. *Id.*

Turning to Escalona's alleged mental-anguish damages, we conclude that such an allegation, without more, is insufficient to avoid summary judgment. Texas does not recognize a general legal duty to avoid negligently inflicting mental anguish on another. *See City of Tyler v. Likes,* 962 S.W.2d 489, 494 (Tex. 1997); *Boyles v. Kerr,* 855 S.W.2d 593, 597 (Tex. 1993). In addition, while mental-

8

anguish damages are recoverable in virtually all personal injury cases, a claimant's right to recover such damages is limited if she did not suffer a physical injury resulting from a defendant's breach. *Mindi M. v. Flagship Hotel, Ltd.*, 439 S.W.3d 551, 564 (Tex. App.—Houston [14th Dist.] 2014, pet. granted, judgm't vacated w.r.m.). Without proof of a physical injury, a plaintiff may recover mental-anguish damages only if her case falls into one of three categories. *Id.* The first category is for claims where the defendant engaged in intentional or malicious conduct, such as assault and battery, or defamation. *Id.* The second type of claim occurs where mental-anguish damages are the foreseeable result of a duty arising out of a special relationship, such as physician-patient. *Id.* The third is for particularly shocking and disturbing events where mental anguish is a highly foreseeable result. *Id.* These claims include wrongful death suits and actions for bystander recovery when a plaintiff was in close proximity to a close family member's serious injury. *Id.* Escalona's negligence claim fits into none of these categories. Even if it did, Escalona's affidavit testimony that she "was highly distraught," does no more than create a mere surmise or suspicion that she experienced mental anguish. *See Moore v. Bushman*, 559 S.W.3d 645, 650 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("This evidence creates no more than a mere surmise or suspicion that the area in question is secluded or private. Given that Bushman owned the adjacent property, more evidence was needed to raise a fact issue regarding whether her camera recorded an area of the Moores' property not normally visible from Bushman's property.").

Because Escalona did not present summary judgment evidence raising a genuine issue of material fact on damages recoverable pursuant to her negligence claims against MC Charter and Chavez, we conclude that the trial court did not err when it granted their no-evidence motion for summary judgment on those claims.

*Id.* We overrule Escalona's first issue.

### III. The trial court did not err when it granted appellees' no-evidence motion for summary judgment on Escalona's defamation claim.

Escalona argues in her second issue that the trial court erred when it granted appellees' no-evidence summary judgment motion on her defamation causes of action. Escalona alleged in her Fourth Amended Petition that Hernandez, while in the course and scope of her employment with MC Charter, "published defamatory assertions of fact about [her] which were false." Escalona further alleged that the statements were "published with actual malice, as they were published with knowledge of or reckless disregard for their falsity." Escalona also alleged that MC Charter is liable for Hernandez's defamatory statements because they were published while she was working in the course and scope of her employment. Finally, Escalona alleged that Chavez is jointly and severally liable as a tortfeasor because he "assisted and encouraged the commission of the tort." In their no-evidence motion for summary judgment, appellees argued that Escalona had no evidence that either MC Charter or Chavez "made the statements with knowledge of falsity or that the[y] were made with malice or in reckless disregard for the truth." We address Escalona's defamation claims against MC Charter and Chavez together.

Our analysis of Escalona's defamation claims begins with the elements of that cause of action. To recover for defamation, a plaintiff ordinarily must prove that the defendant (1) published a statement, (2) that defamed the plaintiff, (3) while either acting with actual malice (if the plaintiff is a public official or figure) or negligence (if the plaintiff is a private individual) regarding the truth of the statement. *Neely v. Wilson*, 418 S.W.3d 52, 60 (Tex. 2013). Section 103.004 of the Texas Labor Code changes those elements when the case arises out of an

employer disclosing information about a current or former employee. The statute provides that

> [a]n employer who discloses information about a current or former employee under Section 103.003 is immune from civil liability for that disclosure or any damages proximately caused by that disclosure unless it is proven by clear and convincing evidence that the information disclosed was known by that employer to be false at the time the disclosure was made or that the disclosure was made with malice or in reckless disregard for the truth or falsity of the information disclosed. For purposes of this subsection, "known" means actual knowledge based on information relating to the employee, including any information maintained in a file by the employer on that employee.

Tex. Lab. Code § 103.004(a). This statute therefore placed upon Escalona the obligation to clear a higher legal hurdle before she could recover. *Foust v. Hefner*, No. 07-13-00331-CV, 2014 WL 3928781, at *4 (Tex. App.—Amarillo Aug. 12, 2014, no pet.) (mem. op.); *see Sw. Bell Tel. v. Garza*, 164 S.W.3d 607, 624, n.51 (Tex. 2004) (noting that Labor Code section 103.004 is one of many statutes that impose a higher evidentiary burden on a plaintiff to prove a particular claim).

On appeal, Escalona confines her argument on her defamation claims against MC Charter and Chavez to the AFC questionnaire Hernandez completed on behalf of MC Charter. More specifically, Escalona complains only about the "Yes" response to the question asking whether Escalona had any "alcohol tests with a result of 0.04 or higher." It is undisputed that Escalona did not have a positive alcohol test while she was employed by MC Charter. But that undisputed fact does not end the analysis. During his deposition, Chavez testified that AFC's alcohol-test question was not limited in time or any other manner to just Escalona's employment with MC Charter. He continued that because MC Charter had Escalona's driving records showing a DWI in 2012, MC Charter provided the "Yes" answer. He also testified that he believed the question was unclear.

11

Lichtenstein testified during her deposition that no one from MC Charter contacted her asking for a clarification of the meaning of the alcohol-test question. We conclude therefore that the summary-judgment evidence establishes that, at most, MC Charter misunderstood exactly what the question was asking about and failed to clarify the meaning before submitting its answer. While this evidence may indicate MC Charter and Chavez were negligent in its handling of the questionnaire, it does not create a genuine issue of material fact that MC Charter, or Chavez, knew the answer was false when it was provided, or provided the answer with reckless disregard for its truth or falsity.[3] Further, Escalona produced no evidence that Chavez made any representations to AFC related to Escalona's employment. We therefore hold that the trial court did not err when it granted appellee's no-evidence motion for summary judgment on Escalona's defamation claims.[4] We overrule Escalona's second issue.

## IV. The trial court did not err when it granted appellees' no-evidence motion for summary judgment on Escalona's tortious interference with contract claim.

In her third issue, Escalona argues that the trial court erred when it granted

---

[3] We also conclude that the fact Chavez did not immediately provide a "corrected" response to the AFC questionnaire does not meet Escalona's summary-judgment burden. The summary-judgment evidence indicates that Chavez learned about the allegedly incorrect questionnaire answer on or about May 13, 2015, a Wednesday, and the "corrected" answer was provided to AFC on May 18, 2015, a Monday. We conclude that this five-day delay, with an intervening weekend, establishes at most, that Chavez and MC Charter were negligent. Finally, to the extent Escalona argues that Hernandez's alleged negative attitude toward her establishes that MC Charter falsely completed the questionnaire with intent, we disagree because there is no evidence in the summary judgment record that Chavez, the sole owner of MC Charter, was aware of the alleged negative attitude.

[4] Because we have determined that Escalona did not produce summary-judgment evidence that the answer to the alcohol-test question was made knowing it was false or that it was made recklessly without knowing whether it was true or false, we need not address her contention that Chavez, who made no statements to AFC about Escalona, could be held liable for defamation solely for assisting or encouraging another in the commission of the tort.

appellees' no-evidence motion for summary judgment on her tortious interference claim. We once again begin with the elements of the challenged cause of action. The elements of a tortious interference with contract claim are (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss. *Funes v. Villatoro*, 352 S.W.3d 200, 213 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). To establish the element of a willful and intentional act of interference, a plaintiff must produce some evidence that the defendant was more than a willing participant and knowingly induced one of the contracting parties to breach its obligations under a contract. *Id.*

In their motion, appellees argued, among other things, that Escalona had no evidence that either appellee "engaged in a willful and intentional act of interference." We agree. Instead, as we determined in addressing Escalona's second issue, Escalona's summary-judgment evidence establishes that appellees were, at most, negligent in responding to the alcohol-testing question. We conclude that this evidence, including the evidence of Hernandez's alleged negative attitude, does not create a genuine issue of material fact that appellees interfered with Escalona's probationary employment contract with AFC by intentionally providing a false answer. *See Juhl v. Airington*, 936 S.W.2d 640 644 (Tex. 1996) (stating that, by definition, negligence is not an intentional wrong); *Lindsey Constr., Inc. v. AutoNation Fin. Serv., LLC*, 541 S.W.3d 355, 367 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (concluding non-movant "did not point out summary-judgment evidence raising a genuine issue of fact as to the essential element that the alleged act of interference was willful and intentional."). We overrule Escalona's third issue.

13

## CONCLUSION

Having overruled Escalona's three issues on appeal, we affirm the trial court's judgment.


/s/ Jerry Zimmerer
   Justice


Panel consists of Justices Wise, Zimmerer, and Spain.